THOMPSON, JUDGE:
In separate cases, the Franklin Circuit Court denied the University of Kentucky's (UK) motions to dismiss actions filed by Rebecca Lynn Davis and Roland Taylor after they were denied long-term disability benefits. UK contends that any claim by Davis or Taylor for declaratory and injunctive relief is precluded by governmental *445 immunity. We agree with the circuit court that at this point in the litigation when no discovery has taken place, dismissal based on immunity is not appropriate and affirm.
Davis and Taylor were long-term employees of UK. Because of their length of employment with UK, each qualified to participate in UK's long-term disability (LTD) benefits program for its regular full-time employees. The LTD Program is a unilateral, self-funded, non-ERISA benefit that UK makes available to its employees at no cost. Although the benefits paid during the first six months of disability are paid under the salary continuation part of the program, long-term benefits paid under the LTD program are funded by an irrevocable LTD Trust established in 1981. PNC Bank, National Association serves as trustee.
The LTD program is governed by the employee staff handbook, human resources policies and procedures and documents adopted by the Board of Trustees. An employee's application for LTD benefits is reviewed by UK's employee relations department, which considers information submitted by the applicant and may include independent medical and vocational examinations relevant to whether the application is totally disabled under the terms of the LTD program. If an employee is denied, he or she may appeal that decision within sixty days to the appropriate UK vice president's office.
Davis and Taylor applied for and were denied LTD benefits and, after following the procedure for internal appeals as provided for in the LTD program, each commenced an action alleging breach of contract against UK based on the staff handbook and the associated personnel policy documents that define the disability compensation programs. They alleged that any immunity UK may have as a state agency was waived by Kentucky Revised Statutes (KRS) 45A.245, part of the Model Procurement Code, which waives immunity for claims brought pursuant to a written contract with the Commonwealth. They further alleged breach of fiduciary duty against PNC Bank. Davis's case was assigned to Division I and Taylor's case was assigned to Division II of the Franklin Circuit Court.
UK filed motions to dismiss on the basis that, as a state agency, it was entitled to immunity. It alleged there was no written contract between it and its employees under the LTD program as required by KRS 45A.245 to waive immunity.
At the time UK's motion was filed, Furtula v. University of Kentucky , 438 S.W.3d 303 (Ky. 2014) was pending in the Kentucky Supreme Court. Because the claims in Furtula were identical to the contract claims raised by Davis and Taylor against UK and governmental immunity was asserted in that case by UK, both divisions of the Franklin Circuit Court entered orders holding Davis's and Taylor's cases in abeyance pending the Supreme Court's final decision.
In Furtula , the Supreme Court held that summary judgment was properly granted to UK on the contract claims based on governmental immunity. It held that the documents relied on by the former UK employees did not constitute a written contract so that immunity was not waived by KRS 45A.245. Following Furtula, UK and PNC filed motions to dismiss Davis's and Taylor's cases. In Taylor's, the Division II court dismissed the action based on Furtula .
In Davis's case, her contract claim against UK was dismissed as precluded by governmental immunity. However, the court held that Davis's claim could proceed based on a request for declaratory and injunctive relief and granted Davis thirty *446 days to file an amended complaint alleging claims for arbitrary and capricious action by UK in violation of Section 2 of the Kentucky Constitution. Although the circuit court concluded that PNC did not owe Davis a fiduciary duty to disburse benefits and dismissed that claim, it ruled PNC should remain a party for purposes of any relief that may be granted to Davis in the form of declaratory or injunctive relief.
UK filed a motion to alter, amend or vacate the order in Davis's case. UK argued that even if a declaratory judgment action is appropriate to determine whether it acted arbitrarily, benefits cannot be ordered to be paid from public funds because it is immune from such payment under governmental immunity. The circuit court denied the motion as premature. No amended complaint had been filed and no discovery conducted.
In the meantime, Taylor moved the Division II court to set aside its prior order of dismissal and grant leave to file an amended complaint. The Division II court granted the motion noting that its original order did not address whether Taylor could seek relief under Section 2 of the Kentucky Constitution. The Division II court adopted the opinion and order in the Davis case and permitted Taylor to file an amended complaint.
UK filed interlocutory appeals in both cases pursuant to Breathitt Cty. Bd. of Educ. v. Prater , 292 S.W.3d 883, 887 (Ky. 2009), which held that "an order denying a substantial claim of absolute immunity is immediately appealable even in the absence of a final judgment." By order, this Court consolidated the appeals. For simplicity, in our discussion, we refer to the Division I and Division II courts as the circuit court.
When ruling on a motion to dismiss under Kentucky Rules of Civil Procedure (CR) 12.02, "the pleadings should be liberally construed in a light most favorable to the plaintiff and all allegations taken in the complaint to be true." Gall v. Scroggy , 725 S.W.2d 867, 869 (Ky. App. 1987). The motion should not be granted unless it appears the moving party would not be entitled to relief under any set of facts which could be proved in support of his claim. Pari-Mutuel Clerks' Union of Ky., Local 541, SEIU, AFL-CIO v. Ky. Jockey Club , 551 S.W.2d 801, 803 (Ky. 1977). Because whether a trial court's ruling was correct is purely a question of law, our review is de novo. Fox v. Grayson , 317 S.W.3d 1, 7 (Ky. 2010).
In Furtula , the Supreme Court began with the settled law that "the state universities of this Commonwealth, including the University of Kentucky, are state agencies that enjoy the benefits and protection of governmental immunity except where it has been explicitly waived by the legislature." Furtula, 438 S.W.3d at 305. With that proposition stated, it addressed whether that immunity had been waived under KRS 45A.245(1), which states:
Any person, firm or corporation, having a lawfully authorized written contract with the Commonwealth at the time of or after June 21, 1974, may bring an action against the Commonwealth on the contract, including but not limited to actions either for breach of contracts or for enforcement of contracts or for both. Any such action shall be brought in the Franklin Circuit Court and shall be tried by the court sitting without a jury. All defenses in law or equity, except the defense of governmental immunity, shall be preserved to the Commonwealth.
The Furtula Court first addressed whether the documents relied upon constituted a written contract and held that the documents establishing UK's LTD program did not create a written contract *447 between it and its employees and, therefore, immunity was not waived by the statute. Furtula , 438 S.W.3d at 310. In doing so, it relied on the language contained in the pertinent documents.
The Court pointed out that UK's staff handbook states: "THIS HANDBOOK IS NOT A CONTRACT. THE EMPLOYEES OF THE UNIVERSITY ARE 'AT WILL' EMPLOYEES AND ARE SUBJECT TO LAY-OFF OR TERMINATION IN ACCORDANCE WITH UNIVERSITY POLICIES AND PROCEDURES." Id. at 309. The Court found further disclaimers in other documents:
Specific human resource policies of the University of Kentucky pertaining to the long-term disability program state that "[t]he University reserves the absolute right ... to modify or change, and to abolish or consolidate any of these programs and plans, or any portion thereof, as deemed appropriate and in the best interests of the University and its employees." Section 8.01 of the long-term disability plan includes a "General Disclaimer" that neither the establishment of the trust, its funding, "nor the payment of any benefits shall be construed as giving any Participant or other person any legal or equitable right against the Employer, or any officer or employee thereof, or the Trustee, except as herein provided." It also provides that "[u]nder no circumstances shall the terms of employment of any Participant be modified or in any way affected hereby." Plan documents specifically state that nothing in it "shall be construed as a contract of employment between [UK] and any Employee[.]"
Id. (footnote omitted). The Court concluded:
Such clear and unequivocal disclaimers of contractual intent along with express reservations of the authority to alter and amend the disability policies at any time make it obvious to employees and prospective employees that the University of Kentucky did not intend, through these documents, to form a contract binding itself to the long term disability and salary continuation programs.
Id. at 309-10 (footnote omitted). Therefore, UK's immunity was not waived and summary judgment on the contract claims was proper.
The circuit court in the present cases held that while Furtula required that the contract claims against UK must be dismissed, there is an alternative form of relief available to Davis and Taylor that was not precluded by Furtula and prior law regarding governmental immunity. The court ruled that Davis and Taylor have a property interest as beneficiaries of the LTD trust which cannot be arbitrarily denied by UK and, if benefits are determined to be due, the court has the power and duty to grant injunctive relief that would enjoin UK to direct PNC to grant such benefits under its LTD program.
We agree that Furtula and the prior law on immunity do not, as a matter of law, preclude Davis and Taylor from seeking declaratory and injunctive relief. We begin with the principle that the state and its agencies cannot arbitrarily deprive a citizen of a property interest she or he holds.
Section 2 of the Kentucky Constitution prohibits arbitrary action of the state. It states: "Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority." As stated in Kendall v. Beiling , 295 Ky. 782, 175 S.W.2d 489, 491 (1943) :
The right to resort to the courts is implicit in the terms of Section 14 of the Constitution of Kentucky, declaring that *448 all courts shall be open and every person shall have a remedy by due course of law for any injury to his person or property or reputation. It is the inherent power of the courts to scrutinize the acts of such administrative tribunals wherein the person or property rights of an individual have been adjudicated, and no special provision of a statute is necessary to confer authority already possessed by them under the constitution.
This same premise was expressed in Am. Beauty Homes Corp. v. Louisville & Jefferson Cty. Planning & Zoning Comm'n , 379 S.W.2d 450, 456 (Ky. 1964) (citations omitted), where the Court stated:
[T]he courts will assume jurisdiction even in the absence of statutory authorization of an appeal. There is an inherent right of appeal from orders of administrative agencies where constitutional rights are involved, and section (2) of the Constitution prohibits the exercise of arbitrary power.
A limitation to that review is "when the right of appeal or the trial court's jurisdiction is codified as a statutory procedure ... the parties are required to strictly follow those procedures." Triad Development/Alta Glyne, Inc. v. Gellhaus , 150 S.W.3d 43, 47 (Ky. 2004).
In this case, while there is no statutory right to judicial review, that right is inherent and not precluded by immunity. Where it is alleged that the state or its agency has acted arbitrarily in violation of Section 2 of the Kentucky Constitution, immunity is not available as a defense to a declaratory judgment action. Our Supreme Court said as much in Commonwealth v. Kentucky Retirement Systems , 396 S.W.3d 833, 840 (Ky. 2013) :
There simply can be no sovereign immunity when it is the propriety of the governmental act that is being reviewed and the constitution is impacted. The state is not above its own constitution and laws. To this extent, a waiver of sovereign immunity is not necessary in a declaratory judgment action against the state.
Immunity is not a bar to a declaratory judgment because it "is not a claim for damages, but rather it is a request that the plaintiff's rights under the law be declared. There is no harm to state resources from a declaratory judgment." Id. at 838.
Davis and Taylor have a property interest at stake as beneficiaries of the LTD trust. The trust is irrevocable and, under the terms of the trust agreement, the funds are "held in trust for the exclusive benefit of eligible employees." Whatever immunity UK has as a state agency does not preclude a declaratory judgment action based on allegations that UK violated Section 2 of the Kentucky Constitution when it denied Davis and Taylor benefits.
However, a declaration that UK acted arbitrarily in violation of Section 2 would be a hollow victory if immunity precludes the court from ordering the payment of benefits pursuant to the LTD program. Yet, this is precisely the argument made by UK.
UK argues that even if immunity does not preclude judicial review of its denial of benefits to program participants, immunity precludes the circuit court from ordering UK to require PNC to disburse past or future benefits to Davis and Taylor.
In Kentucky Retirement Systems , 396 S.W.3d at 839, the Court noted that although a declaratory judgment does not implicate any principle of immunity, in "subsequent or contemporaneous actions to enforce declared rights, the immunity issue could be relevant if the revenue or property of the state would be affected." A monetary award pursuant to a declaratory judgment may be precluded by immunity if it is to be paid from "public coffers or, as *449 it is sometimes denominated, the public purse." Beshear v. Haydon Bridge Co. , 416 S.W.3d 280, 291 (Ky. 2013). As stated in St. Matthews Fire Protection Dist. v. Aubrey, 304 S.W.3d 56, 60 (Ky. App. 2009) (quoting George v. Bernheim Distilling Co., 300 Ky. 179, 188 S.W.2d 321, 324 (1945) ), "[a] litigant 'may not by the mere expedient of proceeding under the declaratory judgment act obtain relief which would be denied to him in a direct proceeding brought to obtain that particular relief.' "
In Beshear , the Court discussed what, if any, injunctive relief was available after it declared that certain provisions of budget bills ordering monies transferred from the Workers' Compensation Benefit Reserve Fund (BRF) to the General Fund and the Department of Mines and Minerals were unconstitutional under Section 51 of the Kentucky Constitution. The Court set forth the events on remand as follows:
[T]he trial court granted permanent prospective relief prohibiting the future transfer of funds from the BRF to the General Fund or any other state agency, and also ordered "retroactive injunctive relief" in the form of a judgment requiring Defendants Governor Steven L. Beshear and State Budget Director Mary E. Lassiter to return any and all monies that had been transferred from the BRF to the General Fund in the decade from 2000-2010. The trial court's order addressed not only transfers from the part of the BRF known as the Special Fund but also the Coal Workers' Pneumoconiosis Fund, a separate fund maintained by KWCFC pursuant to Kentucky Revised Statutes (KRS) 342.1241 and .1242 and the focus of new claims brought by Plaintiffs in their Third Amended Complaint. Finally, the trial court held that the Plaintiffs had created a common fund through this litigation and, consequently, their attorneys were entitled pursuant to KRS 412.070 to a 25% contingency fee ($8,778,725.00) to be paid by the Commonwealth of Kentucky.
Beshear , 416 S.W.3d at 284. The Governor appealed arguing, among other issues, that the retroactive relief granted by the circuit court was a pretext for ignoring sovereign immunity.
The Court began by noting that prospective injunctive power is available to the courts and then turned its attention to whether immunity precluded the retroactive injunctive relief granted by the circuit court. The Court's analysis of the facts pertaining to the funding of the state agencies involved is lengthy and, for the most part, has little relevance here. However, its ultimate legal conclusion is relevant. After analyzing the facts concerning the source of the funds, the Court held:
[T]he retroactive injunctive relief sought by Plaintiffs would require the Commonwealth to withdraw monies from the General Fund, an action the Commonwealth has not consented to through waiver of its sovereign immunity. .... [A]ll of these retroactive orders impinge on sovereign immunity because they require monetary relief that can only be satisfied by draws on a state's treasury.
Id. at 294.
Based on Beshear , whether immunity would preclude the circuit court from ordering UK to require PNC to disburse past and/or future benefits owed to Davis and Taylor depends on the source of those funds, specifically, whether it will come from private money or public funds. Davis and Taylor argue that the LTD program is privately funded while UK argues all or some of the benefits would be paid from public funds.
Beshear teaches that the circuit court must make these factual findings. The Franklin Circuit Court only permitted an *450 amended complaint to be filed requesting declaratory and injunctive relief. There has been no discovery conducted. The circuit court wisely deemed UK's argument that injunctive relief is not available as premature. To resolve this interlocutory appeal, we merely hold UK's immunity does not, as a matter of law, preclude injunctive relief.
Finally, a "motion to strike relief sought in appellee brief filed by PNC Bank, National Association" was filed by Davis and Taylor and passed to this merits panel. Because PNC Bank requests certain relief in the event this Court reverses the circuit and we are affirming, the motion is moot. However, it is worthy of emphasis that our review of this interlocutory appeal is restricted to the denial of immunity to UK. See Mattingly v. Mitchell , 425 S.W.3d 85 (Ky. App. 2013).
Based on the foregoing, the opinions and orders of the Franklin Circuit Court are affirmed.
ALL CONCUR.