RENDERED: MAY 13, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0583-MR

REBECCA LYNN DAVIS                                                      APPELLANT

v.                  APPEAL FROM FAYETTE CIRCUIT COURT
                    HONORABLE LUCY ANNE VANMETER, JUDGE
                    ACTION NO. 18-CI-04127

UNIVERSITY OF KENTUCKY AND
PNC BANK, NATIONAL
ASSOCIATION                                                             APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; GOODWINE AND McNEILL,
JUDGES.

McNEILL, JUDGE: Rebecca Lynn Davis ("Davis") appeals from the order of the

Fayette Circuit Court granting summary judgment[1] in favor of the University of

Kentucky ("UK"), finding that UK's decision to deny her long-term disability

benefits was not arbitrary. After careful review, we affirm.

---

[1] The trial court's order simultaneously denied Davis' motion for declaratory judgment.

Davis worked as a nurse for UK from 1985-2009. As part of her employment, UK provided a long-term disability ("LTD") benefits program to those who qualify as "totally disabled." "The LTD [p]rogram is a unilateral, self-funded, non-ERISA benefit that UK makes available to its employees at no cost." *Univ. of Kentucky v. Davis*, 551 S.W.3d 443, 445 (Ky. App. 2017). It is "governed by the employee staff handbook, human resources policies and procedures and documents adopted by the Board of Trustees." *Id.*

The plan defines "total disability" as the "inability of the employee, due to sickness or bodily injury, to engage in any occupation for which the employee is fitted by education, training or experience for more than twelve calendar months." In 2009, Davis applied for LTD benefits under the program, alleging she was disabled due to degenerative disc disease, constant neck and arm pain, and fibromyalgia. To evaluate Davis' claim, UK sought information from Davis' treating physician, Dr. Paul McLaughlin.

Dr. McLaughlin diagnosed Davis with "severe cervical disc disease, neck pain, right arm pain, weakness and numbness[,] severe headaches[, and] fibromyalgia." In his opinion, Davis was "unable to work due to disability of cervical disc dx; fibromyalgia," impaired from her occupation and any other occupation, and unable to work in any capacity. Despite these opinions, Dr. McLaughlin assessed Davis' physical impairment as a "[m]oderate limitation of

functional capacity; capable of clerical/administrative or sedentary activity."

Later, Dr. McLaughlin would seemingly contradict this statement in a letter to UK where he opined that "due to the patient's inability to reach overhead; lift, push or pull any significant weight, do any type of repetitive motion with her dominant hand, sit for more then [sic] 15 minutes . . . she is permanently disabled."

UK also sent Davis for an independent medical examination ("IME") with Dr. Ellen Ballard. Dr. Ballard stated that Davis' condition would not improve with time and treatment and recommended work restrictions of "no overhead work, no lifting more than 10 pounds, sit/stand as needed, no constant repetitive use of her right upper extremity" and noted these restrictions would be permanent. She further opined that "given her use of medication, [Davis] may presently be totally disabled from any type of work."

Based upon Dr. Ballard's recommendation, UK referred Davis to an occupational therapist, Dr. Ralph Crystal. Dr. Crystal reviewed the medical records and performed a series of vocational tests and concluded that "[j]obs exist at the sedentary levels of exertion within the parameters of the exertional and postural requirements noted by Dr. Ballard." He identified a list of 33 potential jobs, including three in the medical field, utilizing her transferable vocational skills: medical file reviewer, admissions clerk, and utilization review nurse.

On April 29, 2010, UK sent Davis a letter denying her claim for LTD benefits. As evidence supporting its decision, UK cited Dr. Ballard's speculative statement that Davis may be disabled but may benefit from an occupational assessment. From that assessment, UK noted Dr. Crystal's opinion that jobs existed within the work restrictions defined by Dr. Ballard and that Davis would be able to perform those positions "within the physical work assessment indicated." UK determined "[t]his is not consistent with total disability."

Davis retained an attorney and appealed the decision, submitting additional evidence of her disability, including further opinions from Dr. McLaughlin, a vocational assessment by Dr. Stephanie Barnes, additional medical records, an IME by Dr. Frank Burke, and a letter from Davis' husband. Dr. McLaughlin supplemented his opinions to note that in an eight-hour workday, Davis could reasonably be expected to sit or stand for less than one hour at a time, would be unreliable in full-time work and be chronically absent from work based upon medical need. According to Dr. McLaughlin, Davis met the LTD plan's definition of disability.

Dr. Barnes criticized Dr. Crystal's opinions for failing to consider Davis' physical limitations when identifying potential jobs. He noted that many of the jobs required one to be on their feet for at least 30 minutes and those that allowed less time on the feet required repetitive use of the right hand.

Additionally, Dr. Crystal failed "to take into account that even skilled work will not allow one to alter position 'as needed' for comfort in the workplace."

On September 2, 2010, UK denied Davis' appeal. While acknowledging Dr. McLaughlin's opinion supporting LTD benefits, it also noted his opinion that Davis' physical impairment was one of "[m]oderate limitation of functional capacity; capable of clerical/administrative or sedentary activity" and her mental impairment as "able to function under stress and engage in interpersonal relations (no limitations)." It found these statements "consistent with the other assessments of her ability . . . [and] not consistent with total disability."

Following the denial of her appeal, Davis filed a complaint in Franklin Circuit Court alleging her entitlement to LTD benefits and asserting claims for breach of contract and breach of fiduciary duties. UK moved to dismiss the complaint based upon sovereign immunity, and the circuit court granted the motion. However, it held that UK's actions were still subject to review under Section 2 of the Kentucky Constitution for arbitrariness. UK filed an interlocutory appeal and a panel of this Court affirmed. *See Davis*, 551 S.W.3d at 449. The Kentucky Supreme Court denied discretionary review on August 8, 2018.

Davis filed an amended complaint seeking declaratory and injunctive relief and the case was transferred to Fayette Circuit Court. Following discovery, UK filed a motion for summary judgment and Davis filed a motion for declaratory

judgment. On March 13, 2020, the Fayette Circuit Court granted UK's motion for summary judgment, finding that UK's decision to deny LTD benefits was not arbitrary because Davis had been afforded due process and UK's decision was supported by substantial evidence. Davis challenges these rulings on appeal.

"Typically, judicial review of an administrative action is concerned with whether the agency action was arbitrary." *Smith v. Teachers' Ret. Sys. of Kentucky*, 515 S.W.3d 672, 675 (Ky. App. 2017) (citation omitted). "Indeed, state agencies may not exercise arbitrary power over the lives, liberty and property of citizens of the Commonwealth." *Id.* (citing Ky. Const. § 2). "Arbitrariness may arise when an agency: (1) takes an action in excess of granted powers, (2) fails to afford a party procedural due process, or (3) makes a determination not supported by substantial evidence." *Id.* (citation omitted).

Davis first argues that UK's decision to deny her LTD benefits was not supported by substantial evidence. Specifically, she argues that the decision was based upon the single opinion of Dr. Crystal which was flawed and against the weight of the evidence. However, substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Bowling v. Nat. Res. & Env't Prot. Cabinet*, 891 S.W.2d 406, 410 (Ky. App. 1994) (citation omitted).

"Substantial evidence means evidence that is sufficient to induce conviction in the minds of reasonable people." *Smith*, 515 S.W.3d at 675 (citation omitted). "If substantial evidence in the record supports the agency's findings, an appellate court must defer to those findings, even though some evidence may exist to the contrary." *Id.* (citation omitted). "When the fact-finder denies relief to the applicant with the burden of proof, the standard of review is whether the evidence presented by the applicant is so compelling that no reasonable person could have failed to be persuaded by it." *Id.* (citation omitted).

Finally, our standard in reviewing the circuit court's affirmance of an administrative decision is whether the circuit court's findings are clearly erroneous. *Johnson v. Galen Health Care, Inc.*, 39 S.W.3d 828, 833 (Ky. App. 2001). Thus, we begin our review by considering the findings of fact UK relied upon in denying Davis LTD benefits. Pursuant to the LTD program, to be eligible for LTD benefits, Davis had to show that she lacked the ability "to engage in any occupation for which the Participant is or becomes reasonably qualified by training, education or experience." Between the initial denial and subsequent denial of appeal, UK found the following evidence inconsistent with total disability.

First, UK noted that Dr. Ballard opined that Davis "*may presently* be totally disabled from any type of work" but might also benefit from an

occupational assessment. It then cited Dr. Crystal's occupational evaluation report which found that "[j]obs exist at the sedentary levels of exertion within the parameters of the exertional and postural requirements noted by Dr. Ballard." Dr. Crystal listed various jobs he believed were within the work restrictions identified by Dr. Ballard and then suggested Davis "would be able to perform the above jobs within the physical work assessment indicated." UK also noted Dr. McLaughlin's opinion of Davis' physical impairment as being "[m]oderate limitation of functional capacity; capable of clerical/administrative or sedentary activity," supporting the opinions of Dr. Ballard and Dr. Crystal.

Contrary to Davis' argument, UK's decision to deny LTD benefits was supported by substantial evidence. While Davis takes issue with the accuracy and reliability of Dr. Crystal's opinions, UK as fact-finder "is afforded great latitude in its evaluation of the evidence and the credibility of the witnesses, including its findings and conclusions of fact." *Smith*, 515 S.W.3d at 675 (citation omitted). Further, UK's decision was not based solely on Dr. Crystal's report, as alleged by Davis, but also upon the opinions of Dr. Ballard and Davis' own treating physician, Dr. McLaughlin.

Dr. Ballard's opinion that Davis "*may presently* be totally disabled from any type of work" is speculative, not conclusory. Her use of the word "may" could suggest that Dr. Ballard believed Davis might be able to perform certain

-8-

jobs, despite her limitations. This interpretation is bolstered by the fact that Dr. Ballard prescribed certain work restrictions as treatment options. Dr. Ballard also stated that Davis "may *presently* be disabled," suggesting that Davis' disability (which Dr. Ballard attributed to Davis' medication, not physical limitations) could possibly be treated through medication management.

Additionally, Dr. McLaughlin opined that Davis had only moderate physical impairment and was capable of clerical/administrative or sedentary activity, consistent with the opinions of Dr. Ballard and Dr. Crystal. Taken together, this evidence was substantial enough to conclude that Davis was not totally disabled. *See Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (internal quotation marks and citations omitted) ("[S]ubstantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion[.]").

While Davis argues that the weight of the evidence supports a finding of disability, the question on appeal is "whether the evidence presented by the applicant is so compelling that no reasonable person could have failed to be persuaded by it." *Smith*, 515 S.W.3d at 675 (citation omitted). Although substantial evidence existed which could have supported a finding of disability, other substantial evidence supported UK's finding that Davis was not totally disabled as defined by the plan's terms. It cannot be said that the evidence was such as to compel a finding of disability.

Davis also argues she was denied due process because UK did not hold a hearing, did not take evidence, and did not enter formal findings of fact and conclusions of law. We disagree. "[P]rocedural due process does not always require a full-blown trial-type hearing." *Abul-Ela v. Kentucky Bd. of Med. Licensure*, 217 S.W.3d 246, 251 (Ky. App. 2006) (citing *Kentucky Central Life Insurance Co. v. Stephens*, 897 S.W.2d 583, 590 (Ky. 1995)). "The fundamental requirement of procedural due process is simply that all affected parties be given 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Hilltop Basic Res., Inc. v. Cty. of Boone*, 180 S.W.3d 464, 469 (Ky. 2005) (citing *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976)).

"The concept of constitutional due process in administrative hearings is flexible." *Danville-Boyle Cty. Plan. & Zoning Comm'n v. Prall*, 840 S.W.2d 205, 207 (Ky. 1992) (citing *Goldberg v. Kelly*, 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970)). As to what constitutes a "hearing," it is simply an "opportunity to present reasons, either in person or in writing, why proposed action should not be taken[.]" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 105 S. Ct. 1487, 1495, 84 L. Ed. 2d 494 (1985) (citation omitted).

Here, Davis had the opportunity to present evidence that she was disabled and entitled to benefits under the LTD policy. She submitted numerous

medical records and multiple expert opinions from her primary physician and others. After her claim was denied, Davis was afforded an appeal and the opportunity to submit further evidence. She then then tendered additional expert opinions as well as statements from co-workers and family concerning her disability. Her attorney submitted a detailed letter outlining the evidence in support of Davis' disability, accompanied by argument. Davis was given the opportunity to be meaningfully heard and this is all that due process requires.

Further, we find Davis' argument that UK did not take evidence or make findings of fact meritless. UK requested expert opinions from Davis' treating physicians and further arranged an IME as well as an occupational assessment for Davis. Davis submitted further opinions from physicians and other experts. All this evidence was submitted to and considered by UK in its decision to deny LTD benefits. Further, UK supported its decision by citing the evidence it relied upon. UK's procedure in denying Davis LTD benefits comported with due process.

Because we have determined that UK's decision to deny Davis LTD benefits was supported by substantial evidence and that Davis received due process, we need not address UK's argument that any monetary award pursuant to the declaratory judgment action would be precluded by UK's sovereign immunity.

Based upon the foregoing, the order of the Fayette Circuit Court granting summary judgment in favor of UK is affirmed.


ALL CONCUR.


BRIEF FOR APPELLANT:

Earl Rogers III
Morehead, Kentucky

BRIEF FOR APPELLEE
UNIVERSITY OF KENTUCKY:

Joshua M. Salsburey
Jessica R. Stigall
William E. Thro
Lexington, Kentucky