RENDERED: MARCH 8, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1276-MR

KENTUCKY COMMUNITY &
TECHNICAL COLLEGE SYSTEM
AND DAVID ADKINS, IN HIS
OFFICIAL CAPACITY AS
DIRECTOR OF TREASURY
MANAGEMENT                                                          APPELLANTS


                          APPEAL FROM FRANKLIN CIRCUIT COURT
v.                        HONORABLE THOMAS D. WINGATE, JUDGE
                          ACTION NO. 18-CI-00975


SAYRE LAWRENCE; MARK
METCALF, KENTUCKY STATE
TREASURER; BENJAMIN LANE;
DEPARTMENT OF REVENUE;
KIMBERLY BENNETT; MOREHEAD
STATE UNIVERSITY; RONNIE
LESTER, INDIVIDUALLY; SUSAN
KRAUSS, IN HER OFFICIAL
CAPACITY AS UNIVERSITY
TREASURER; TERESA LINDGREN,
IN HER OFFICIAL CAPACITY AS
CHIEF FINANCIAL OFFICER; AND
UNIVERSITY OF KENTUCKY                                              APPELLEES

    AND

NO. 2022-CA-1321-MR


COMMONWEALTH OF KENTUCKY,
DEPARTMENT OF REVENUE                                    APPELLANT



                    APPEAL FROM FRANKLIN CIRCUIT COURT
v.              HONORABLE THOMAS D. WINGATE, JUDGE
                         ACTION NO. 18-CI-00975



KIMBERLY BENNETT; BENJAMIN
LANE; RONNIE LESTER,
INDIVIDUALLY; AND SAYRE
LAWRENCE                                                 APPELLEES

AND


                    NO. 2022-CA-1353-MR


UNIVERSITY OF KENTUCKY;
MARY FISTER-TUCKER IN HER
OFFICIAL CAPACITY; MOREHEAD
STATE UNIVERSITY; AND PENNY
COX IN HER OFFICIAL CAPACITY                             APPELLANTS



                    APPEAL FROM FRANKLIN CIRCUIT COURT
v.              HONORABLE THOMAS D. WINGATE, JUDGE
                         ACTION NO. 18-CI-00975



KIMBERLY BENNETT AND
BENJAMIN LANE                                            APPELLEES

OPINION
AFFIRMING IN PART, REVERSING
IN PART, AND REMANDING

** ** ** ** **

BEFORE: ACREE, GOODWINE, AND JONES, JUDGES.

ACREE, JUDGE: Appellants, which include Kentucky Community and Technical College System (KCTCS), the University of Kentucky (UK), Morehead State University (MSU), each school's respective head financial officer, the Commonwealth of Kentucky, Department of Revenue (Department), and Kentucky Treasurer Allison Ball, appeal from the Franklin Circuit Court's October 19, 2022 order denying their motions to dismiss. As relevant to this interlocutory appeal, the circuit court concluded sovereign immunity did not apply to any of Appellees' claims. We affirm in part, reverse in part, and remand.

## BACKGROUND

Appellees, Kimberly Bennett, Benjamin Lane, Sayre Lawrence, and Ronnie Turner,[1] filed suit on September 27, 2018 to challenge the ability of Appellants KCTCS, UK, and MSU to refer their outstanding student debts to the Department for collection. In addition to KCTCS, UK, MSU, and the Department, Appellees sued financial officers for each educational institution in their official

---

[1] Appellees seek class certification in the underlying suit, which they have not yet obtained.

-3-

capacities. Additionally, Appellees sued then-Kentucky Treasurer Allison Ball in her official capacity.

Each Appellee was a former student at either KCTCS, UK, or MSU, and each had unpaid tuition debt owed to their respective institution. Under KRS[2] 45.238, debt that an agency certifies shall be referred to the Department for collection; KRS 45.237 defines an "agency" as an organizational unit or administrative body of the Commonwealth's executive branch. KRS 45.238(1); KRS 45.237(1)(a). Using this statutory mechanism, KCTCS, UK, and MSU referred the debts to the Department for collection. This resulted in the levy of the Appellees' tax refunds, levy from their bank accounts, or both.

In their complaint, Appellees pursue a variety of relief. First, Appellees seek a declaratory judgment that KCTCS, UK, and MSU may not legally refer debts to the Department, arguing these entities are not "agencies" under KRS 45.237 and that their debts are not "liquidated debts" under KRS 45.241(1)(b). Second, Appellees challenge the constitutionality of KRS 45.237 to 45.241, arguing the statutes to be unconstitutional both facially and as applied. Third, Appellees seek relief on the basis of mistake, alleging KCTCS, UK, MSU, and the Department mistakenly represented that they had the ability to collect the

---

[2] Kentucky Revised Statutes.

-4-

debts when they did not. Additionally, Appellees challenge the Department's assessed collection fee of 25% as excessive. In addition to various declaratory judgments, Appellees request "a judgment for relief in the form of the equitable remedy of restitution of their monies" and an order directing the Kentucky State Treasurer and the financial officers of the universities to return Appellees' funds. Record (R.) at 24-26.

The circuit court held this case in abeyance pending the outcome of *University of Kentucky v. Moore*, 599 S.W.3d 798 (Ky. 2019). In *Moore*, a declaratory judgment action involving the Department's collection of outstanding medical debt owed to UK Healthcare, UK moved to dismiss; UK asserted, among other arguments, that "it is a state agency that shares the Commonwealth of Kentucky's sovereign immunity." *Id.* at 801-02. The Kentucky Supreme Court held that UK "is in the executive branch of government[,]" without declaring whether UK is an executive branch entity empowered to refer debts to the Department under KRS 45.238. *Moore*, 599 S.W.3d at 810. Additionally, the Supreme Court held that sovereign immunity did not bar Moore's declaratory judgment action, while declining to decide whether monetary relief resulting from a declaratory judgment is barred by sovereign immunity because that question was unripe. *Id.* at 813.

After expiration of the circuit court's abeyance period, Appellants filed three motions to dismiss: one from KCTCS, another from UK, MSU, and their financial officers, and a third from the Department. Across these motions, Appellants argued, as relevant to the present appeal, that Appellees failed to state a claim for which relief can be granted and that sovereign immunity bars Appellees' requested monetary relief. Appellants asserted other arguments that remain pending before the circuit court, including arguments related to exhaustion of administrative remedies.

On October 19, 2022, the circuit court entered an order denying the Appellants' motions to dismiss. Therein, the circuit court addressed threshold issues.[3] Relevant to the present appeal, the circuit court determined sovereign immunity does not bar any of Appellees' claims. It held that the General Assembly had waived immunity for both the amounts taken out of Appellees' tax refunds and for money improperly paid into the state treasury. The circuit court concluded KRS 131.565(6), 131.570(1), and 45.111 provide such waiver.

---

[3] In addition to the sovereign immunity issue before us, the circuit court determined, per *Moore*, that KCTCS, UK, and MSU are entitled to refer debts to the Department for collection, but that KRS 45.241 requires debts to first be liquidated – meaning a party must obtain a civil judgment against a debtor from whom it seeks to collect prior to doing so.

Appellants appealed the circuit court's order denying their motions to dismiss. Following initial motion practice before this Court, we agreed to take this interlocutory appeal and limit our review to the issue of sovereign immunity only.[4]

## STANDARD OF REVIEW

CR[5] 12.02 governs motions to dismiss. "Under CR 12.02 a court should not dismiss for failure to state a claim unless the pleading party appears not to be entitled to relief under any state of facts which could be proved in support of his claim." *Weller v. McCauley*, 383 S.W.2d 356, 357 (Ky. 1964) (citation omitted). When considering a motion to dismiss under CR 12.02, "the pleadings should be liberally construed in a light most favorable to the plaintiff and all allegations taken in the complaint to be true." *Gall v. Scroggy*, 725 S.W.2d 867, 869 (Ky. App. 1987) (citation omitted). Though the "[d]enial of a motion to dismiss is generally interlocutory and unappealable because appellate review is reserved for final judgments[,] . . . when an appeal is based on a claim of sovereign

---

[4] We note that Appellants variously argue they are entitled to either "sovereign immunity" or "governmental immunity" between their briefs. These are different concepts. Governmental immunity is derived from sovereign immunity. *Yanero v. Davis*, 65 S.W.3d 510, 519 (Ky. 2001) (citing 57 AM. JUR. 2D, *Municipal, County, School and State Tort Liability,* § 10 (2001)). "However, to the extent that the agency is performing a governmental function, as a state university does, its governmental immunity is functionally the same as sovereign immunity." *Furtula v. Univ. of Kentucky*, 438 S.W.3d 303, 305 n.1 (Ky. 2014) (citing *Yanero*, 65 S.W.3d at 519). Because these immunities are "functionally the same" in the context of this appeal, *id.*, and the terms are often used interchangeably, *see Yanero*, 65 S.W.3d at 519, we will refer to the form of immunity at issue in this appeal as "sovereign immunity."

[5] Kentucky Rules of Civil Procedure.

immunity, immediate *de novo* review is available upon request." *Cnty. Emps. Ret. Sys. v. Frontier Housing, Inc.*, 536 S.W.3d 712, 713 (Ky. App. 2017) (citing CR 54.01; *Breathitt Cnty. Bd. of Educ. v. Prater*, 292 S.W.3d 883, 886 (Ky. 2009)).

Naturally, if a defendant is afforded immunity against a plaintiff's claims, then the plaintiff will not be entitled to relief and his claims should be dismissed. "The question of whether a defendant is protected by sovereign immunity . . . is a question of law." *State v. Great Lakes Minerals, LLC*, 597 S.W.3d 169, 171 (Ky. 2019) (citing *Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 475 (Ky. 2006)). We review questions of law *de novo*. *Estate of Clark ex rel. Mitchell v. Daviess Cnty.*, 105 S.W.3d 841, 844 (Ky. App. 2003).

## ANALYSIS

We note at the outset that the issue of sovereign immunity in this appeal is quite similar, but not identical, to the sovereign immunity issue presented in a companion consolidated appeal: *University of Kentucky, et al. v. Amelia Long, et al.*, No. 2023-CA-0398-MR and *Commonwealth of Kentucky, Department of Revenue, et al. v. Amelia Long, et al.*, No. 2023-CA-0411-MR. In a manner similar to the facts of this appeal, the Appellees in *Long* were subject to referral of outstanding UK HealthCare medical debt to the Department for collection via the KRS 45.237 *et seq.* mechanism. There, too, the circuit court identified a waiver of sovereign immunity for the appellees' claims. However, the circuit court in *Long*

-8-

identified a different sovereign immunity waiver than those discussed herein. Therefore, our analysis here will largely – but not entirely – overlap with the analysis presented in *Long*.

"Sovereign immunity is a bedrock component of the American governmental ideal, and is a holdover from the earliest days of the Commonwealth, having been brought over from the English common law." *Caneyville Volunteer Fire Dep't v. Green's Motorcycle Salvage, Inc.*, 286 S.W.3d 790, 799 (Ky. 2009). Only when the state has waived this immunity may suits be brought against the state. *Yanero v. Davis*, 65 S.W.3d 510, 518 (Ky. 2001) (citing RESTATEMENT (SECOND) OF THE LAW OF TORTS § 895B(1) (A.L.I. 1979); 72 AM. JUR. 2D, *States, Territories, and Dependencies*, § 99 (1974)).

Where sovereign immunity applies, it "affords the state absolute immunity from suit[.]" *Transit Auth. of River City v. Bibelhauser*, 432 S.W.3d 171, 173 (Ky. App. 2013). Absolute immunity is not simply a shield from liability, and, instead, frees the immune party "'from the burden of defending oneself altogether.'" *Lexington-Fayette Urb. Cnty. Gov't v. Smolcic*, 142 S.W.3d 128, 135 (Ky. 2004) (quoting *Fralin & Waldron, Inc. v. Henrico Cnty., Va.*, 474 F. Supp. 1315, 1320 (E.D. Va. 1979)). Accordingly, those who are afforded absolute immunity are protected from the costs associated with trial and discovery. *Id.* (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18, 102 S. Ct. 2727, 2738, 73 L.

Ed. 2d 396 (1982)).  As the Supreme Court of the United States pointedly encapsulates this principle, "the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action." *Mitchell v. Forsyth*, 472 U.S. 511, 525, 105 S. Ct. 2806, 2815, 86 L. Ed. 2d 411 (1985) (citations omitted).

KCTCS, UK, MSU, and their officers sued in their official capacities are afforded sovereign immunity, should immunity apply.  "The state universities of this Commonwealth, including the University of Kentucky, are state agencies that enjoy the benefits and protection of governmental immunity except where it has been explicitly waived by the legislature." *Furtula v. Univ. of Kentucky*, 438 S.W.3d 303, 305 (Ky. 2014); *see also Withers v. Univ. of Kentucky*, 939 S.W.2d 340, 344 (Ky. 1997) ("[The] University of Kentucky is entitled to sovereign immunity[.]").  And, where, as here, the state is the real party against which relief is sought, immunity "extends to public officials sued in their representative (official) capacities[.]" *Yanero*, 65 S.W.3d 510, 518 (citations omitted).

Waiver of immunity is "a matter exclusively legislative." *Withers*, 939 S.W.2d at 344; *see also Univ. of Kentucky v. Guynn*, 372 S.W.2d 414, 416 (Ky. 1963) ("As a matter of grace, such a remedy may be granted, withdrawn or restricted at the will of the legislature.").  "It is an inherent attribute of a sovereign state that precludes the maintaining of any suit against the state unless the state has

-10-

given its consent or otherwise waived its immunity." *Yanero*, 65 S.W.3d 510, 517

(citing RESTATEMENT (SECOND) OF THE LAW OF TORTS § 895B(1) (A.L.I. 1979); 72

AM. JUR. 2D, *States, Territories, and Dependencies*, § 99 (1974)). Waiver of

immunity must be "specific and explicit[.]" *Commonwealth v. Whitworth*, 74

S.W.3d 695 (Ky. 2002) (citing *Withers*, 939 S.W.2d 340). Statutes which

purportedly waive sovereign immunity are to be strictly construed in favor of the

state, and a waiver should only be found if "the intent of the legislature to effect

this object is clearly expressed." *Lexington-Fayette Urb. Cnty. Gov't Bd. of Health

v. Bd. of Trustees of Univ. of Kentucky*, 879 S.W.2d 485, 486 (Ky. 1994). Further,

purported waivers of immunity are to be construed narrowly. *Commonwealth,

Just. & Pub. Safety Cabinet, Dep't of Kentucky State Police v. Gaither*, 539

S.W.3d 667, 676 (Ky. 2018). "We will find waiver only where stated by the most

express language or 'by such overwhelming implications from the text as [will]

leave no room for any other reasonable construction.'" *Withers*, 939 S.W.2d at

346 (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171, 29 S. Ct. 458,

464-65, 53 L. Ed. 742 (1909)) (modification original).

     As recognized in *Moore*, the Kentucky Supreme Court has identified

exceptions to sovereign immunity for declaratory relief and for injunctive relief.

*Moore*, 599 S.W.3d at 811 (citing *Beshear v. Haydon Bridge Co., Inc.*, 416 S.W.3d

280, 293-94 (Ky. 2013)). However, as we explain below, close exploration of the

-11-

*nature* of the specific relief a plaintiff seeks is required to determine whether sovereign immunity prohibits it.

Because application of sovereign immunity depends on the nature of the requested relief, it is important to note the relief Appellees request in the instant case. Across each count in their Complaint, Appellees seek (1) declaratory judgments that their debts may not be legally referred to the Department, that the Department may not legally undertake efforts to collect the debts, that Appellees are entitled to such further relief in the form of an order and judgment directing the return of their money, that KRS 45.237 to 45.241 are unconstitutional both facially and as applied, and that the Department illegally imposed a collection fee; (2) judgment in the form of equitable remedy of restitution of the collected funds; and (3) an order and judgment directing Appellants to return Appellees' money.

I. **Sovereign Immunity Bars Appellees' Requested Monetary Relief, Including Their Requests For Declarations They Are Entitled To Monetary Relief**.

The circuit court identified two waivers of sovereign immunity applicable to the present case. First, it concluded that KRS 45.111 supplies a waiver of sovereign immunity for claims for money improperly paid into the treasury. The statute provides:

> Any funds received into the State Treasury which are later determined not to be due to the state may be refunded to the person who paid such funds into the Treasury. The Finance and Administration Cabinet may issue a warrant to disburse the funds upon a request from the budget unit

-12-

> that originally received and deposited the funds. The request for refund must be approved by the head of the budget unit or his designated assistant. The Finance and Administration Cabinet may require any documentation deemed necessary.

KRS 45.111.  If the circuit court is correct, this broad waiver would exempt the entirety of the Appellees' suit from the protections of sovereign immunity.

The Kentucky Supreme Court discussed whether KRS 45.111 waives sovereign immunity for certain claims in *Beshear v. Haydon Bridge Company, Inc.*, 416 S.W.3d 280 (Ky. 2013) (*Haydon Bridge II*).[6]  In *Haydon Bridge II*, the plaintiffs challenged two budget bills suspending appropriations from the General Fund to the Kentucky Workers' Compensation Funding Commission's Benefit Reserve Fund (BRF) and transferring from the BRF to other state funds and departments.  416 S.W.3d at 283-84.  The Governor asserted sovereign immunity precluded the trial court's relief:  (1) an injunction prohibiting transfer of funds out of the BRF into the General Fund or to other state agencies; and (2) "retroactive

---

[6] *Haydon Bridge II* is the second appeal resulting from a lawsuit in which plaintiffs Haydon Bridge Company, Inc., Greater Louisville Auto Dealers Association, Kentucky Automobile Dealers Association, M & M Cartage Co., Inc., Springfield Laundry & Dry Cleaners, Inc. and Usher Transport, Inc. sued the Governor and the State Budget Director.  *Haydon Bridge II*, 416 S.W.3d at 284.  The plaintiffs sought a declaratory judgment that provisions in budget bills which (1) suspended an annual appropriation from the General Fund to the Benefit Reserve Fund (BRF) maintained within the Kentucky Workers' Compensation Funding Commission (KWCFC) and (2) transferred money out of the BRF to either the General Fund or the Department of Mines and Minerals were unconstitutional.  *Id*. at 285.  The Kentucky Supreme Court determined the suspension of appropriations was constitutional, but that the transfers out of the BRF were unconstitutional.  *Id*.  Upon remand, the circuit court allowed the plaintiffs to file an amended complaint, eventually resulting in the second appeal.  *Id*. at 285-86.

injunctive relief" requiring the return of "any and all monies that had been transferred from the BRF to the General Fund in the decade from 2000-2010." *Id.* at 284.

The *Haydon Bridge II* plaintiffs argued immunity against their claims was waived in KRS 45.111. *Id.* at 289. The Supreme Court noted the statute provided for refund of monies not "'due to the state[.]'" *Id.* (quoting KRS 45.111). Because the workers' compensation insurance premiums at issue in *Haydon Bridge II* were lawfully subject to assessment and, therefore, "literally 'due to the state[,]'" and because the plaintiffs sought restoration of the funds to the BRF rather than a refund of their premiums, the Kentucky Supreme Court determined KRS 45.111 was inapplicable and did not constitute a waiver of sovereign immunity. *Id.* at 289-91.

Despite finding the statute did not apply, the Kentucky Supreme Court did state "the refund provisions of KRS 45.111 constitute a limited waiver of sovereign immunity[.]" *Id.* at 291. However, the Supreme Court in *Haydon Bridge II* did not explain or explore the parameters of that limited waiver. Further, the allegations in *Haydon Bridge II* were distinct from the allegation in the instant case – that the monies Appellees owed for tuition was *not* due the state.

Appellees seek both prospective declaratory relief – a declaration that the referral and collection of their debt is contrary to law – and what the *Haydon*

*Bridge II* Court termed "retroactive injunctive relief" in the form of both equitable restitution and an order from the circuit court requiring the return of their money already collected. The "retroactive injunctive relief" in *Haydon Bridge II* took the form of a trial court order directing the Governor to return money transferred from the BRF to the General Fund. *Haydon Bridge II*, 416 S.W.3d at 284. As the Supreme Court determined, "sovereign immunity bars the retroactive monetary relief ordered by the trial court regardless of whether it is labeled a retroactive injunction, equitable restitution, or some other type of remedy." *Id*. at 295. This was so because the plaintiffs' requested retroactive injunctive relief "would require the Commonwealth to withdraw monies from the General Fund, an action the Commonwealth has not consented to through waiver of its sovereign immunity." *Id*. at 294.

The circuit court in the instant appeal concluded that KRS 45.111 constitutes a waiver of sovereign immunity for claims seeking money improperly paid into the treasury, basing this conclusion upon *Haydon Bridge II*'s allusion to KRS 45.111's limited waiver of sovereign immunity – the parameters of which the Supreme Court did not define. R. at 740; *Haydon Bridge II*, 416 S.W.3d at 291. Whatever the scope of the KRS 45.111 waiver might be, it cannot be interpreted to permit Appellees' claims for monetary relief – whether under the guise of equitable restitution or that of injunctive relief – to bypass sovereign immunity,

-15-

considering *Haydon Bridge II*'s determination that sovereign immunity shields the

Commonwealth from retroactive injunctive relief seeking withdrawal of money

already paid into the state treasury. *See Haydon Bridge II*, 416 S.W.3d at 292-94.

We cannot read the *Haydon Bridge II* opinion to reach two opposite conclusions.

The circuit court also identified a narrower waiver – that sovereign

immunity is waived as to Appellees' challenge to the offset of their tax refunds – in

KRS 131.565(6) and 131.570(1). Respectively, these statutes provide:

> Each state agency requesting the withholding of any individual income tax refund shall indemnify the department against any and all damages, court costs, attorneys fees, and any other expenses related to litigation which arises concerning the administration of KRS 131.560 to 131.595 as it pertains to a refund withholding action requested by such agency.

KRS 131.565(6).

> (1) Upon determining that a pending individual income tax refund is subject to setoff as authorized under this section, the debtor shall be notified in writing by the department of the claim made against such refund by the named claimant agency, and of the department's intention to set off the refund against the debt to the claimant agency. The notice shall provide that the debtor, within thirty (30) days from the date of the notice, may request a hearing before the claimant agency as provided by statute or local ordinance. No issues at such hearing may be considered that have been litigated previously, and the debtor, after being given due notice of rights of appeal, must exercise such rights in a timely manner. The decision of the claimant agency shall be subject to appeal as all other decisions rendered by the claimant agency. No funds shall be transferred to a

claimant agency until the debtor's appeal rights have been exhausted.

KRS 131.570(1).

The circuit court concluded that, because KRS 131.565(6) requires state agencies to indemnify the Department for damages, court costs, attorneys fees, and other litigation expenses in the event someone institutes legal action challenging the withholding of their tax refund, KRS 131.565(6) waives sovereign immunity for Appellees' challenge to the offset of their tax refunds. The circuit court also determined KRS 131.570(1) provides this waiver, but did not explain why.

Our analysis with respect to Appellees' request for monetary relief applies with equal force to the circuit court's conclusion regarding KRS 131.565(6) and 131.570(1). Ordering the return of this money would be the sort of "retroactive monetary relief" contemplated by *Haydon II* and which sovereign immunity bars. Repayment of money taken from Appellees' tax refunds and applied toward their unpaid debt would constitute monetary relief paid out of public funds, which sovereign immunity precludes. *See Haydon II*, 416 S.W.3d at 292-94; *see also Univ. of Kentucky Davis*, 551 S.W.3d 443, 448-49 (Ky. App. 2017).

However, if, hypothetically, KRS 131.565(6) and 131.570(1) provide a waiver of sovereign immunity, such waiver would be inapplicable to the

Department's offset of Appellees' tax refunds. UK, MSU, and KCTCS referred Appellees' debts to the Department by the statutory mechanism of KRS 45.237 *et seq.*, rather than the mechanism under KRS 131.560 *et seq.*

There is an obvious reason why one statutory mechanism was appropriate and why the other was not. The act comprised of KRS 131.560 *et seq.* is titled "Application of Refunds to *Taxes Due*." *See* KRS 131.560 to 131.595 (emphasis added). Appellees' debts at issue are not unpaid taxes. If the General Assembly intended KRS 131.560 *et seq.* to include unpaid costs of post-secondary education, the section would have been titled differently. KY. CONST. § 51 (a law's "subject . . . shall be expressed in the title").

More importantly, the language of KRS 131.565(6) and 131.570(1) is insufficiently specific to constitute a waiver of sovereign immunity as it relates to Appellees' pursuit of monetary relief in the underlying dispute. KRS 131.565(6) requires state agencies seeking to withhold tax refunds to indemnify the Department "against any and all damages, court costs, attorneys fees, and any other expenses related to litigation which arises *concerning the administration of KRS 131.560 to 131.595* as it pertains to a refund withholding action requested by such agency." KRS 131.565(6) (emphasis added). Similarly, KRS 131.570 provides a notice requirement and a dispute resolution process "[u]pon determining that a

-18-

pending individual income tax refund *is subject to setoff as authorized under this section*[.]" KRS 131.570(1) (emphasis added)

In the instant case, Appellees' debts were referred to the Department in accordance with KRS 45.237 *et seq.*, titled "Collection of Debts Owed the Commonwealth." Again, sovereign immunity prohibits actions against the government unless the claimant can direct to court to statutory language expressly waiving it or where necessary implication eliminates any other reasonable interpretation except a waiver. *Withers*, 939 S.W.2d at 346 (citation omitted). KRS 131.560 *et seq.* contain no cross reference to KRS 45.237 *et seq.*, and KRS 131.560 *et seq.* specifically confines its scope to tax refund offsets arising under its own title. Therefore, even presuming KRS 131.560 *et seq.* does provide some species of sovereign immunity waiver, that waiver does not apply to the collection of Appellees' debts.

As for Appellees' requested declaration that they are entitled to an order and judgment directing the return of the funds at issue, such declaratory relief is, in effect, monetary relief, and therefore prohibited. If the Kentucky Supreme Court determined in *Haydon Bridge II* that disguising a request for monetary damages as one for either equitable restitution or retroactive injunctive relief was insufficient to avoid application of sovereign immunity, 416 S.W.3d at 293-94, then a declaration that Appellees are entitled to an order and judgment

-19-

returning their money is also barred. Simply, this declaratory relief, in truth, is monetary relief in disguise which, as explained, sovereign immunity bars.

Therefore, Appellees' requested monetary relief is barred by sovereign immunity and the circuit court erred in concluding otherwise.

## II. Sovereign Immunity Does Not Bar Appellees' Other Declaratory Relief.

However, declaratory relief, which Appellees also request, interacts with the Commonwealth's sovereign immunity quite differently because of the nature of such relief. "Sovereign immunity is founded on the notion that the resources of the state, its income and property, cannot be compelled as recompense for state action that harms a plaintiff through the ordinary suit-at-law process." *Commonwealth v. Kentucky Ret. Sys.*, 396 S.W.3d 833, 836 (Ky. 2013). But, "a declaratory judgment action is not a claim for damages, but rather it is a request that the plaintiff's rights under the law be declared." *Id.* at 838. Declaratory judgments do not bear upon state resources, and "[w]hen the state is a real party in interest, the state is merely taking a position on what a plaintiff's rights are in the underlying controversy." *Id.*

The Kentucky Supreme Court has observed the qualitative difference between petitions for declaratory judgments and claims for damages, as well as the sound reasoning for exempting declaratory judgment actions from sovereign immunity, and stated:

> We do not have a government that is beyond scrutiny. If sovereign immunity can be used to prevent the state, through its agencies, from being required to act in accordance with the law, then lawlessness results. This review is qualitatively different from requiring the state to pay out the people's resources as damages for state injury to a plaintiff. This is the very act of governing, which the people have a right to scrutinize. Thus to say that the state is entirely immune is an overbroad statement.

*Id*. at 839. "The state is not above its own constitution and laws." *Id*. at 840.

Of course, declaratory judgment is a remedy, but the nature of the remedy places it beyond the ambit of sovereign immunity. The Kentucky Declaratory Judgment Act, found in KRS Chapter 418, "is intended to be remedial in nature, and its purpose is to make courts more serviceable to the people by way of settling controversies and affording relief from uncertainty and insecurity with respect to rights, duties, and relations." *Mammoth Med. v. Bunnell*, 265 S.W.3d 205, 209 (Ky. 2008). Declaratory judgment actions may be brought alone, or, as in the present appeal, "may be brought with the substantive claim seeking recompense." *Id*. (citing *Fontaine v. Dep't of Finance*, 249 S.W.2d 799 (Ky. 1952)); KRS 418.040 ("In any action in a court of record of this Commonwealth having general jurisdiction wherein it is made to appear that an actual controversy exists, the plaintiff may ask for a declaration of rights, either alone or with other relief[.]").

This brings our attention to *University of Kentucky v. Moore*, in which the Department garnished Moore's paychecks, bank accounts, and tax refunds, and imposed a collection fee and interest following UK HealthCare's referral of her medical debt to the Department for collection. *Moore*, 599 S.W.3d at 800-01. Just as in the instant appeal, UK HealthCare certified the debt and referred it to the Department by means of the mechanism provided in KRS 45.237 *et seq*. *Id*. at 801. Also, as in the instant case, Moore challenged UK HealthCare's status as an agency[7] authorized to refer debts to the Department as contemplated by the statute. *Id*.

After amending her complaint, Moore only sought a declaratory judgment from the circuit court. *Id*. at 801-02. Specifically, Moore requested the following declaratory judgment:

> UK and UK HealthCare may not legally refer Moore's debt to the Enterprise Collections Office for collection and consequently the Department of Revenue and/or the Enterprise Collections Office may not legally undertake efforts to collect debt owed to UK, including efforts such as garnishing Moore's bank accounts, wages and tax refunds.

*Id*. at 801. Accordingly, Moore never directly requested relief in the form of the return of her money from the treasury. *See id*.

---

[7] The Kentucky Supreme Court in *Moore* specifically left open the question of whether UK is an executive branch agency for the purpose of KRS 45.237 *et seq*., remanding the issue to the circuit court for its resolution.

The Kentucky Supreme Court in *Moore* reached two conclusions with direct bearing on the underlying dispute, but only one of these issues bears upon the current, interlocutory appeal. First, it concluded that UK "is in the executive branch of government" as to KRS 45.237 *et seq.*, but remanded to the circuit court to determine whether UK is entitled to refer debts to the Department via KRS 45.238. *Id.* at 810.

Relevant to the current appeal,[8] the Kentucky Supreme Court concluded sovereign immunity did not bar Moore's declaratory judgment action. *Id.* The Supreme Court observed that the Declaratory Judgment Act permitted a declaratory judgment "when a person's rights are affected by a statute or other government regulation." *Id.* (citing KRS 418.045). Following a declaration of rights, "further relief based upon that declaration may be granted whenever necessary or proper" and such further relief may be granted either in the same action or in an independent action. *Id.* (citing KRS 418.055). Additionally, the Supreme Court noted its decision in *Commonwealth v. Kentucky Retirement Systems*, where sovereign immunity did not bar a suit by a group of county

---

[8] Irrelevant to the sovereign immunity question, the Supreme Court also concluded UK "is in the executive branch of government" as to KRS 45.237 *et seq.*, but remanded to the circuit court to "determine whether UK is an executive branch entity entitled to refer debts to the Department of Revenue for collection pursuant to KRS 45.238." *Moore*, 599 S.W.3d at 810.

-23-

employees seeking a declaration that a statute affecting their retirement benefits was unconstitutional. *Id*. at 810-11 (citing *Ret. Sys.*, 396 S.W.3d at 833).

Both *Moore* and *Retirement Systems* make it clear that declaratory judgment actions are not barred by sovereign immunity. This ensures the decisions of the government are not above reproach. "The state is not above its own constitution and laws." *Ret. Sys.*, 396 S.W.3d at 840. "To this extent" – meaning to the extent a declaratory judgment action seeks to adjudicate statutory or constitutional rights – "a waiver of sovereign immunity is not necessary in a declaratory judgment action against the state." *Id*. Therefore, those declarations Appellees seek which, by their nature, are not actually monetary relief, the circuit court did not err in determining these declarations are exempt from sovereign immunity.

## III. The Issue Whether Sovereign Immunity Bars Monetary Relief Flowing From A Declaratory Judgment is Unripe.

It is true, both *Moore* and *Retirement Systems* are distinct from the instant action because only declaratory relief was at issue. 599 S.W.3d at 801-02; *Ret. Sys.*, 396 S.W.3d at 836. In this case, Appellees seek injunctive relief directing the return of their collected funds. However, as discussed above, sovereign immunity bars the monetary relief which Appellees immediately request. As this case demonstrates, sovereign immunity may bar one form of relief while not barring another, even where both requests arise from the same operative facts.

-24-

The appellants in *Moore* implored the Supreme Court to distinguish their case from *Retirement Systems*: they argued sovereign immunity still applied in the context of their case because Moore would ultimately use the requested declaratory judgment to obtain a refund from UK and the treasury. Accordingly, they argued Moore's declaratory judgment would run counter to the principle that sovereign immunity protects the resources of the state from being used to compensate a plaintiff via the suit-at-law process. *Id*. at 811 (citing *Ret. Sys.*, 396 S.W.3d at 836). Ultimately, however, the Supreme Court declined to determine whether any monetary relief flowing from a declaratory judgment action is barred by sovereign immunity because that question was not yet ripe. *Id*. at 812-13.

Appellants ask this Court to determine whether sovereign immunity bars declaratory judgment actions where declaratory relief, should it be granted, will *ultimately* be used to pursue monetary relief. In that respect, Appellants believe this case picks up where *Moore* left off. As the Supreme Court notes in *Moore*, "'it is also true that in subsequent . . . actions to enforce declared rights, the immunity issue could be relevant if the revenue or property of the state would be affected.'" *Id*. at 813 (modification original) (quoting *Ret. Sys.*, 396 S.W.3d at 838).

However, in *Moore*, the circuit court had already entered its declaratory judgment prior to appeal. *Id*. at 802. The Supreme Court determined

-25-

UK's and the Department's argument that "sovereign immunity bars monetary injunctive relief flowing from a declaratory judgment" to be unripe because "issues that would necessarily be addressed preliminary to any monetary relief remain[ed] undecided." *Id*. at 813.

There is more similarity between *Moore* and the current appeal than Appellants would probably wish. The circuit court has not granted any of Appellees' requested declaratory judgments and has not otherwise decided Appellees' declaratory relief petition on its merits. This case is not in a posture that would allow this Court to determine whether sovereign immunity applies to monetary injunctive relief flowing from a declaratory judgment. Because this issue is unripe, we will not address it.

## **<u>CONCLUSION</u>**

Based on the foregoing, we affirm in part and reverse in part the Franklin Circuit Court's October 19, 2022 order and remand for proceedings consistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANTS
UNIVERSITY OF KENTUCKY
AND MOREHEAD STATE
UNIVERSITY:

Bryan H. Beauman
Kevin G. Henry
Lexington, Kentucky

BRIEFS FOR APPELLANT KCTCS:

Melissa Norman Bork
Brent R. Baughman
Sarah T. Laren
Lexington, Kentucky

BRIEFS FOR APPELLANT
COMMONWEALTH OF
KENTUCKY DEPARTMENT OF
REVENUE:

R. Campbell Connell
Frank L. Dempsey
Austin T. Green
Frankfort, Kentucky

ORAL ARGUMENT FOR
APPELLANTS UNIVERSITY OF
KENTUCKY AND MOREHEAD
STATE UNIVERSITY:

Bryan H. Beauman
Lexington, Kentucky

ORAL ARGUMENT FOR
APPELLANT KCTCS:

Melissa N. Bork
Lexington, Kentucky

BRIEFS FOR APPELLEES
KIMBERLY BENNETT, BENJAMIN
LANE, SAYRE LAWRENCE, AND
RONNIE LESTER:

E. Douglas Richards
Lexington, Kentucky

Bryan C. Hix
Frankfort, Kentucky

ORAL ARGUMENTS FOR
APPELLEES:

E. Douglas Richards
Lexington, Kentucky

-27-

ORAL ARGUMENT FOR
APPELLANT COMMONWEALTH
OF KENTUCKY DEPARTMENT OF
REVENUE:

R. Campbell Connell
Frankfort, Kentucky