Stephen **SMITH**, Appellant

v.

**TEACHERS' RETIREMENT SYSTEM OF KENTUCKY**, Appellee

NO. 2015–CA–001224–MR

Court of Appeals of Kentucky.

JANUARY 13, 2017; 10:00 A.M.

Discretionary Review Denied by Supreme Court April 19, 2017

Modified February 17, 2017

---

BRIEFS FOR APPELLANT: J. Follace Fields, II, Lexington, Kentucky

BRIEF FOR APPELLEE: Tamela A. Biggs, Frankfort, Kentucky

BEFORE: COMBS, J. LAMBERT, AND VANMETER,[1] JUDGES.

## OPINION

VANMETER, JUDGE:

Public school employees are entitled to retirement benefits pursuant to KRS[2] Chapter 161. The amount of the benefit is, in part, based on annual compensation, as defined by KRS 161.220(10). Stephen Smith, an employee of the Kentucky Educational Development Corporation ("KEDC"), annually received incentive pay in connection with his employment. The issue we must resolve in this case is whether the Franklin Circuit Court erred in affirming the Kentucky Teachers' Retirement Systems' ("KTRS") determination that Smith's annual incentive pay was to be excluded from his annual compensation in determining his retirement benefits. We hold that the circuit court did not err and therefore affirm its Opinion and Order.

## I. Factual and Procedural Background.

Smith worked for the KEDC for 28 years, installing networks in school districts and wiring school buildings. By virtue of his employment, he was a member of KTRS. Beginning in 1997–98, KEDC began offering incentive pay to employees, with the KEDC Executive Director having the authority to determine whether to make adjustments or provide an incentive payment provision. Between 1997 and 2012, Smith received incentive pay bonuses totaling $206,401.30, and KEDC deducted $20,408.42 from Smith's pay and remitted this amount to KTRS.

---

1. Judge Laurance B. VanMeter authored this opinion prior to being elected to the Kentucky Supreme Court. Release of this opinion was delayed by administrative handling.

2. Kentucky Revised Statutes.

In 2012, in anticipation of retirement, Smith consulted with KTRS for an estimate of his retirement pay. Following this consultation, KTRS informed Smith that his incentive pay would not be included in his annual compensation for retirement purposes since incentive pay was available to some, but not all, KEDC employees, and that the $20,408.42 would be refunded to Smith.

Smith properly requested review of the initial decision. A hearing was held, at which extensive evidence was developed as to Smith's employment and pay history, the number of KEDC employees who were entitled to incentive pay bonuses, KTRS's interpretation of the statutes governing the system, as well as credit for annual leave days permitted to superintendents and other school administrators. The hearing officer ruled in favor of KTRS, following which Smith filed exceptions to the recommended order. The Appeals Committee of the Board of Trustees of KTRS adopted the hearing officer's order as its Final Order, with a minor exception relating to the refund of Smith's contribution based on his incentive pay. Thereafter, Smith filed an appeal with the Franklin Circuit Court, which likewise affirmed. This appeal now follows.

## II.  Standard of Review.

Typically, judicial review of an administrative action is concerned with whether the agency action was arbitrary. *Bd. of Comm'rs v. Davis*, 238 S.W.3d 132, 135 (Ky. App. 2007). Indeed, state agencies may not exercise arbitrary power over the lives, liberty and property of citizens of the Commonwealth. Ky. Const. § 2. Arbitrariness may arise when an agency: (1) takes an action in excess of granted powers, (2) fails to afford a party procedural due process, or (3) makes a determination not supported by substantial evidence. *Hilltop*

*Basic Res., Inc. v. County of Boone*, 180 S.W.3d 464, 467 (Ky. 2005).

Substantial evidence means evidence that is sufficient to induce conviction in the minds of reasonable people. *McManus v. Ky. Ret. Sys.*, 124 S.W.3d 454, 458 (Ky. App. 2003). If substantial evidence in the record supports the agency's findings, an appellate court must defer to those findings, even though some evidence may exist to the contrary. *Ky. Comm'n on Human Rights v. Fraser*, 625 S.W.2d 852, 856 (Ky. 1981). On the other hand, a decision not supported by substantial evidence is arbitrary and violates Section 2 of the Kentucky Constitution. *Kaelin v. City of Louisville*, 643 S.W.2d 590, 591 (Ky. 1982). When the fact-finder denies relief to the applicant with the burden of proof, the standard of review is whether the evidence presented by the applicant is so compelling that no reasonable person could have failed to be persuaded by it. *McManus*, 124 S.W.3d at 458. Finally, in its role as fact-finder, an administrative agency is afforded great latitude in its evaluation of the evidence and the credibility of the witnesses, including its findings and conclusions of fact. *Aubrey v. Off. of Att'y Gen.*, 994 S.W.2d 516, 519 (Ky. App. 1998).

A reviewing court assesses whether the agency correctly applied the law under a *de novo* standard of review. *Davis*, 238 S.W.3d at 135. If the court finds that the agency applied the correct rule of law to facts supported by substantial evidence, the court must affirm the agency's final order. *Brown Hotel Co. v. Edwards*, 365 S.W.2d 299, 302 (Ky. 1962).

## III.  Issues on Appeal.

In this case, the agency's factual findings are not seriously in question and the main issue primarily concerns whether the agency and the trial court correctly applied KRS 161.220(10) in excluding Smith's

incentive pay from his annual compensation for purposes of calculating his retirement benefits.

KRS 161.220(10) provides:

"Annual compensation" means the total salary received by a member as compensation for all services performed in employment covered by the retirement system during a fiscal year. *Annual compensation shall not include payment for any benefit or salary adjustments made by the public board, institution, or agency to the member or on behalf of the member which is not available as a benefit or salary adjustment to other members employed by that public board, institution, or agency* . . . . The board of trustees shall determine if any benefit or salary adjustment qualifies as annual compensation. For an individual who becomes a member on or after July 1, 2008, annual compensation shall not include lump-sum payments upon termination of employment for accumulated annual or compensatory leave[.]

(emphasis added).

Smith makes three arguments. First, he argues that the legislature intended the statute to have the most beneficial effect, to be given the most beneficial construction, to grant members credit for total salary received for all services performed, and any ambiguity is to be construed to the benefit of the member. Smith asserts that the Board and the circuit court erred in their interpretation of the word "other" in the statute by placing a restrictive interpretation such that it required salary or benefit adjustments to be available to "all other" members, as opposed to "some other" members. Under the "some other" meaning advanced by Smith, he contends

that some other KEDC employees received annual incentive benefits and thus he was entitled to have his annual incentive benefits included in his annual compensation. Second, Smith argues that KTRS and the circuit court erred in their respective assessment of the evidence. And, third, that KTRS has adopted an arbitrary construction of the statute.

Before 1992, the term "annual compensation" was defined as "total salary received by a member as compensation for all services performed in employment covered by the retirement system during a fiscal year, including any deductions, or any amount agreed upon by the member and the employer as an alternate form of remuneration to the member for services performed[.]" KRS 161.220(10) (1991). As then enacted, the statutory definition was clear, and unambiguously reflected the legislative intent that all compensation be covered. In 1992, however, the legislature revised the definition, as follows:

"Annual compensation" means the total salary received by a member as compensation for all services performed in employment covered by the retirement system during a fiscal year. Annual compensation shall not include payment for any benefit or salary adjustments made by the public board, institution, or agency to the member or on behalf of the member which is not available as a benefit or salary adjustment to other members employed by that public board, institution, or agency. The board of trustees shall determine if any benefit or salary adjustment qualifies as annual compensation.

1992 Ky. Acts ch. 192, § 1.[3] Contrary to the interpretation urged by Smith, in 1992,

---

**3.** The legislature subsequently added further exclusions from "annual compensation" relating to certain salary supplements under KRS

Chapters 157 and 158, annual compensation earned while on assignment to an organization or board not listed in KRS 161.220(4),

the legislature began to limit the definition of "annual compensation." As we view the statute, the meaning seems to be capable of two constructions, and thus is ambiguous.

In terms of statutory construction, the Kentucky Supreme Court has written extensively:

> When construing a statute, this Court is presented with an issue of law which we address *de novo. Cumberland Valley Contractors, Inc. v. Bell County Coal Corp.*, 238 S.W.3d 644, 647 (Ky. 2007). "The cardinal rule of statutory construction is that the intention of the legislature should be ascertained and given effect." *MPM Financial Group, Inc. v. Morton*, 289 S.W.3d 193, 197 (Ky. 2009); *Saxton v. Commonwealth*, 315 S.W.3d 293, 300 (Ky. 2010) ("Discerning and effectuating the legislative intent is the first and cardinal rule of statutory construction."). This fundamental principle is underscored by the General Assembly itself in the following oft-quoted language of KRS 446.080(1): "All statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature. ..." In *Shawnee Telecom Resources, Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011), we summarized the basic principles of statutory construction as follows:

> > In construing statutes, our goal, of course, is to give effect to the intent of the General Assembly. We derive that intent, if at all possible, from the language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration.... We presume that the General Assembly intended for the statute to be construed as a whole, for all of its parts to have meaning, and for it to harmonize with related statutes.... We also presume that the General Assembly did not intend an absurd statute or an unconstitutional one.... Only if the statute is ambiguous or otherwise frustrates a plain reading, do we resort to extrinsic aids such as the statute's legislative history; the canons of construction; or, especially in the case of model or uniform statutes, interpretations by other courts....

(citations omitted).

Thus, we first look at the language employed by the legislature itself, relying generally on the common meaning of the particular words chosen, which meaning is often determined by reference to dictionary definitions. *See, e.g., Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 58 (Ky. 2011) (employing dictionary to determine "common, ordinary meaning" of the verb "to arise" as used in long-arm service of process statute); *Devasier v. James*, 278 S.W.3d 625, 632 (Ky. 2009) (using dictionary to determine common, everyday meaning of "communicate" in statute requiring mental health professional to warn intended victim of actual threat); *Malone v. Ky. Farm Bureau Mut. Ins. Co.*, 287 S.W.3d 656, 658 (Ky. 2009) (using dictionary to define "agree" as used in Motor Vehicle Reparations Act settlement statute); *Commonwealth v. McCombs*, 304 S.W.3d 676, 681 (Ky. 2009) (using dictionary to define "club" as used in statutory definition of a "deadly weapon"); *Clark v. Commonwealth*, 267 S.W.3d 668, 676–77 (Ky. 2008) (using dictionary to define "employ," "authorize," "induce" and "produce" as used in penal statutes addressing sexual performance by minor).

and for members joining after July 1, 2008, lump-sum payments upon termination of employment for accumulated annual or compensatory leave.

The particular word, sentence or subsection under review must also be viewed in context rather than in a vacuum; other relevant parts of the legislative act must be considered in determining the legislative intent. *Petitioner F. v. Brown*, 306 S.W.3d 80, 85–86 (Ky. 2010) (Statutory enactment must be read as a whole and in context with other parts of statute with "any language in the act ... read in light of the whole act."); *Democratic Party of Ky. v. Graham*, 976 S.W.2d 423, 429 (Ky. 1998) (Court cannot focus on "a single sentence or member of a sentence but [must] look to the provisions of the whole.").

However, this preliminary assessment may not resolve the issue if the statute's wording is ambiguous. As cogently stated in *MPM Financial Group*,

> [w]hen the undefined words or terms in a statute give rise to two mutually exclusive, yet reasonable constructions, the statute is ambiguous. *Young v. Hammond*, 139 S.W.3d 895, 910 (Ky. 2004); *See also* Black's Law Dictionary 88 (8th ed.2004), (defining ambiguity as: "An uncertainty of meaning or intention, as in a contractual term or statutory provision."); *Black's Law Dictionary* 73 (5th ed.1979) (a term is "ambiguous" when "it is reasonably capable of being understood in more than one sense").

*Jefferson Ctny. Bd. of Educ. v. Fell*, 391 S.W.3d 713, 718–20 (Ky. 2012) (footnote omitted).

■■■ We presume that the legislature intends to make a change in existing law by enacting an amendment. *See City of Somerset v. Bell*, 156 S.W.3d 321, 326 (Ky. App. 2005) (stating that when interpreting a statute, a court appropriately considers the "contemporaneous facts and circumstances which shed intelligible light on the intention of the legislative body. When a statute is amended, the presumption is that the legislature intended to change the law.") (internal quotations and citations omitted). Additionally, courts will defer to an administrative agency's long-standing interpretation of an ambiguous statute. *Commonwealth, ex rel. Stumbo v. Kentucky Pub. Serv. Comm'n*, 243 S.W.3d 374, 380 (Ky. App. 2007) (citing *Bd. of Trs. of Judicial Form Ret. Sys. v. Att'y Gen.*, 132 S.W.3d 770, 787 (Ky.2003); *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843–845, 104 S.Ct. 2778, 2782–2783, 81 L.Ed.2d 694 (1984) (If the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute).

■■■ As noted, the statute reflects a legislative decision to limit annual compensation which is available to compute retirement benefits. Dictionary definitions of the word "other" as quoted by the parties can be used to support either position. *See* 67 C.J.S. *Other* (1978) (stating "[t]he word 'other,' as defined by all dictionaries ... has numerous and various meanings and various shades of meaning, depending on the context in which it is found[ ]") (footnotes omitted). That said, under the construction urged by Smith, the legislation would hardly have been necessary. If a benefit or salary adjustment would have been available to only a few employees, then the existing statute, as existed prior to its 1992 amendment, would seem sufficient to cause inclusion in those few employees' "annual compensation." Thus, the legislature presumably intended to make a wholesale change, *i.e.*, that "benefits or salary adjustments" would not be included in an employee's "annual compensation" for pension purposes unless available to all other employees. As noted by the Franklin Circuit Court in a previous dispute involv-

ing the interpretation of KRS 161.220(10), the public policy underlying this provision "is non-preferential treatment in the calculation of retirement benefits." *Daeschner v. Teachers' Ret. Sys.*, Docket No. 09–CI–01789, slip op. at 7 (Franklin Cir. Ct., Mar. 22, 2011). This also seems to place a more reasonable construction on the words "other members." If the construction urged by Smith had been intended, the legislature could have easily used the words, "another member." Instead, the legislature used the words, "other members" thereby signifying that the benefit or salary adjustment would need to be available to all other members.

The record also contains ample evidence that the agency, with the exception of an instance in 1993,[4] has consistently interpreted the statutory provisions to exclude from "annual compensation" benefits or salary enhancements which were not provided to *all* members of a school district. As noted, an agency's longstanding interpretation of statutes it is charged with administering is entitled to deference. *Stumbo*, 243 S.W.3d at 380.

Smith's second argument is that the circuit court and the agency erred in factual findings since incentive pay was not unique to Smith. On this issue, the circuit court stated:

> The question before the Court is whether the evidence in the record supports [the agency's] conclusion that the incentive pay … was unique to … Smith, or whether it was available to all other similarly situated KEDC employees. The evidence in the record indicates that the incentive pay at issue was a benefit unique to [Smith]. There is no

evidence in the record to indicate that the incentive pay received by [Smith] was available to other KEDC employees classified as consultants or even as hourly employees.

The record indicates that some, albeit not all, KEDC employees received incentive pay. In light of our holding that the statute requires a "benefit or salary enhancement" be available to all other employees, neither the agency nor the circuit court erred in its assessment of the evidence.

■ Smith's final argument is that the agency's application of KRS 161.220(10) is arbitrary and capricious since it had previously and routinely permitted similarly situated KTRS covered members to receive salary credit for payment of unused annual leave days. Specifically, Smith argues, "[a]nnual days usually only applied to a handful of employees in a school district, administrators with 240–day contracts, not to teachers and other covered members with fewer contract days." We disagree.

A thorough reading of KRS Chapter 161, relating to School Employees; Teachers' Retirement and Tenure, reveals that the legislature created the provisions relating to a member's accrued annual leave, and authorized the inclusion as a part of a retiring member's annual compensation for the member's last year of active service. KRS 161.155(10) (creating similar potential property right for compensation for unused sick leave); 161.220(9); 161.540. In *Weiand v. Bd. of Trs. of Ky. Ret. Sys.*, 25 S.W.3d 88, 93 (Ky. 2000), the Court noted that "[p]roperty rights are created and defined by state law." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). "Thus,

---

4. In *Daeschner,* the court noted that KTRS inadvertently included an additional benefit in a retiring superintendent's retirement annuity, but otherwise had consistently explained and enforced the same rule: "a benefit that is

not available to *all* employees in the district shall not be considered 'compensation' for the purposes of calculation of retirement benefits." Slip op. at 8 (emphasis added).

whatever property rights [an employee or spouse] may have are created and defined by the statutory scheme which governs the [retirement system.]" *Weiand*, 25 S.W.3d at 93. The record in this case is clear that Smith's attempts to create an inconsistent application of the law by comparing himself to superintendents and other school administrators who may receive the benefit of annual leave days is unconvincing since that accrual is expressly authorized by statute.

## IV.  Conclusion.

For the foregoing reasons, the Franklin Circuit Court's Opinion and Order affirming the decision of the Kentucky Teachers' Retirement System is affirmed.

ALL CONCUR.