RENDERED: MARCH 17, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0370-MR

DAVID BURKS                                                          APPELLANT

v.
APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE KIMBERLY N. BUNNELL, JUDGE
ACTION NO. 21-CI-01593

BOARD OF TRUSTEES OF THE
LEXINGTON-FAYETTE URBAN
COUNTY GOVERNMENT'S POLICE
AND FIREFIGHTER'S RETIREMENT
FUND                                                                   APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; CALDWELL AND GOODWINE,
JUDGES.

GOODWINE, JUDGE: David Burks ("Burks") appeals from an opinion and order

of the Fayette Circuit Court affirming the denial of his petition for disability

benefits by the Board of Trustees of the Lexington-Fayette Urban County

Government Policemen's and Firefighter's Retirement Fund ("Board"). After careful review, finding no error, we affirm.

Burks was hired by the Lexington-Fayette Urban County Government ("LFUCG") Division of Police as a police officer in 2006. On April 22, 2020, Burks applied for total and permanent occupational disability. In his application, Burks claimed he had cumulative back trauma dating back to December 27, 2008, when he suffered an injury to his back when he fell to the ground while escorting a handcuffed suspect who attempted to pull away. Burks did not seek any medical treatment for that injury.

However, about ten years after the 2008 injury, Burks sought workers' compensation benefits for back pain. He attributed the pain to wearing a duty belt that holds the tools police officers must carry each day. For nearly a year, from 2018-2019, Burks did not wear a duty belt. LFUCG settled the workers' compensation claim, and he was moved to a modified duty position in 2019 to accommodate his doctor's restrictions related to his back pain.

On April 22, 2020, Burks applied to the Board seeking occupational disability retirement benefits. He claimed working as a police officer caused cumulative trauma to his back that started when he was injured in December 2008 and continued with the daily wearing of the duty belt.

After Burks submitted his application, the Board voted to send Burks to two orthopedic surgeons to determine if he qualified for benefits for his back pain under KRS[1] 67A.480(1). First, Dr. Gary T. Bray evaluated Burks and determined he was totally and permanently disabled from performing his duties as a police officer and assigned a disability rating of two percent of the whole body. However, Dr. Bray found his disability attributable to two non-occupational conditions, ulcerative colitis and seronegative spondylitic arthropathy. Second, Dr. Gregory Grau evaluated Burks and determined he met the criteria for total and permanent occupational disability due to L4-5 stenosis related to his 2008 work-related back injury. Dr. Grau assigned a twelve percent impairment rating.

Because Dr. Bray and Dr. Grau provided conflicting evaluations of Burks' condition, the Board voted to send Burks to a third doctor. Dr. Michael Best evaluated Burks and concluded he did not have a disability and was physically capable of performing the duties of a police officer.

Because the Board did not have a consensus from its selected physicians as to whether Burks was disabled, the Board denied Burks' application of occupational disability benefits.

Burks moved for rehearing. During Burks' counsel's opening statement, he conceded that Burks had a pre-existing degenerative disc disease,

---

[1] Kentucky Revised Statutes.

-3-

which was congenital in nature and predated his employment. Burks presented reports from four doctors in support of his position that he suffered from duty-prohibiting cumulative trauma to his back. First, Dr. David Burke, an orthopedist, determined Burks had a "cumulative trauma condition of the back which is attributable to wearing his gun belt combined with prolonged sitting and entering/existing [sic] a police cruiser repeatedly during his employment." Board's May 12, 2021 Order at 2. Dr. Burke concluded Burks could safely perform his duties as a police officer and assigned an impairment rating of 7%. However, on remand from the circuit court, the Board entered supplemental findings referencing Dr. Burke's supplemental report concluding Burks was unable to safely return to the physical duties of a police officer.

Second, Dr. Anthony J. McEldowney, Burks' treating physician, determined Burks suffered "from cumulative back trauma related to his police duties that are not attributable to spondyloarthropathy, and that he cannot safely perform the physical duties of a police officer." *Id.*

Third, Dr. Thomas Howard, Burks' treating rheumatologist, opined Burks' "back pain is likely mechanical in nature and not attributable to inflammatory change." *Id.*

Fourth, Dr. James Owen, an occupational medicine physician who first evaluated Burks after his workers' compensation application, opined Burks

had a permanent occupational disability caused by his occupation. Additionally, Burks submitted "materials addressing low back pain in police officers and correlation to the wearing of a patrol duty belt." *Id.* Following the rehearing, the Board entered a final order denying Burks' application for total and permanent disability.

Burks then filed a petition for judicial review with the Fayette Circuit Court. The circuit court heard Burks' petition and partially remanded the case for the Board to clarify what evidence it considered.

After filing his petition for judicial review, Burks applied for non-occupational disability retirement benefits. The Board granted his application on July 14, 2021.

On remand, the Board issued supplemental findings of fact explaining it considered all evidence Burks offered. After a rehearing, the circuit court affirmed the Board's decision, and this appeal followed.

On appeal, Burks argues: (1) substantial evidence does not support the Board's denial of his application for occupational disability retirement; and (2) the Board's findings of fact failed to consider the evidence he presented, specifically Dr. Howard's opinion.

"Typically, judicial review of an administrative action is concerned with whether the agency action was arbitrary." *Smith v. Teachers' Ret. Sys. of*

*Kentucky*, 515 S.W.3d 672, 675 (Ky. App. 2017) (citation omitted). "Arbitrariness may arise when an agency: (1) takes an action in excess of granted powers, (2) fails to afford a party procedural due process, or (3) makes a determination not supported by substantial evidence." *Id.* (citation omitted). "A reviewing court assesses whether the agency correctly applied the law under a *de novo* standard of review. If the court finds that the agency applied the correct rule of law to facts supported by substantial evidence, the court must affirm the agency's final order." *Id.* (internal citations omitted). Additionally, "[w]here the fact-finder's decision is to deny relief to the party with the burden of proof or persuasion, the issue on appeal is whether the evidence in that party's favor is so compelling that no reasonable person could have failed to be persuaded by it." *McManus v. Kentucky Retirement Systems*, 124 S.W.3d 454, 458 (Ky. App. 2003) (citation omitted).

Burks argues substantial evidence does not support the Board's decision to deny Burks' occupational disability retirement, and the Board ignored his evidence, specifically the opinion of Dr. Howard. As both of these arguments are evidentiary issues, we address them in tandem. Burks asserts five of the seven doctors who gave reports on his condition opined that he suffered from a permanent disability due to his work-related activities. He argues the Board's two doctors whose opinions did not support a finding of an occupational disability were

conflicting.  Dr. Bray determined Burks was disabled, but he attributed the disability to non-work-related events, while Dr. Best determined Burks was not disabled.  He briefly attacks the opinions of the physicians selected by the Board, but he does not explain why his higher quantity of medical evidence is more credible than opinions of the doctors selected by the Board.  In sum, Burks argues his position is supported by a greater number of doctors, and the Board ignored the evidence he presented.

The Board points out that Burks misstates the relevant considerations for us to consider on appeal.  Instead of focusing on the sufficiency and accuracy of the Board's evidence, Burks attempts to attack the credibility of the physicians as witnesses while ignoring the flaws in his own evidence.

"The test of substantiality of evidence is whether when taken alone or in the light of all the evidence it has sufficient probative value to induce conviction in the minds of reasonable men." *Kentucky State Racing Commission v. Fuller*, 481 S.W.2d 298, 308 (Ky. 1972) (citation omitted).  "The rule in Kentucky is that if there is substantial evidence in the record to support an agency's findings, the findings will be upheld, even though there may be conflicting evidence in the record." *Kentucky Commission on Human Rights v. Fraser*, 625 S.W.2d 852, 856 (Ky. 1981) (citation omitted).  "In its role as a finder of fact, an administrative agency is afforded great latitude in its evaluation of the evidence heard and the

-7-

credibility of witnesses, including its findings and conclusions of fact." *Aubrey v. Office of Attorney General*, 994 S.W.2d 516, 519 (Ky. App. 1998) (citation omitted).

We give great deference to the Board in its fact-finding role. Contrary to Burks' assertion, the Board did consider "other evidence as shall have been presented to it by the member" under KRS 67A.480(3). The findings of fact in the Board's final order includes a summary of the evidence Burks presented on rehearing. On remand from the circuit court, the Board supplemented its findings of fact with Dr. Burke's supplemental report and concluded its decision to deny Burks' application for occupational disability was unchanged. The Board clearly considered Burks' evidence and determined his evidence was less credible than the reports of the physicians selected by the Board.

Additionally, Burks' evidence was not so compelling to persuade any reasonable person. *McManus*, 124 S.W.3d at 458. Burks argues his evidence was sufficiently compelling to persuade any reasonable person because the number of medical opinions he presented that he has a work-related disability outweighs the number of opinions that he does not have a work-related disability. However, the relevant consideration is the quality of the evidence presented and not the quantity.

In its Appellee Brief, the Board addresses Burks' evidence at his rehearing in four categories: (1) updated opinions from physicians he retained to

support his 2019 workers' compensation application; (2) opinions from his treating physicians; (3) academic sources; and (4) medical records from his treating physicians. The Board points out that Burks' evidence omitted critical facts, contained inconsistencies, and lacked objective medical support.

First, Dr. Burke and Dr. Owen first examined Burks in 2019 to support his workers' compensation application and produced supplemental reports for his 2021 disability application. Burks moved to a modified duty position after each doctor gave their initial opinions. In 2019, they both found Burks' occupation caused his disability. However, neither doctor commented on the change in his job conditions or how the modification of duty should have affected the progress of his disability.

Second, opinions from Burks' treating physicians were inconsistent, lacked objective medical support, or failed to address key facts for the Board. Dr. McEldowney, an orthopedic surgeon, testified at the rehearing. Dr. McEldowney admitted that Burks has a rheumatological condition that could potentially damage the spine. Dr. McEldowney criticized Dr. Bray, also an orthopedist, for giving an opinion about rheumatological conditions. However, Dr. McEldowney gave a conflicting medical opinion that the disability was not caused by the same rheumatological condition. Furthermore, Dr. McEldowney provided no objective

medical evidence linking Burks' disability to his occupational duties and instead relied on Burks' self-reporting.

Dr. Howard opined Burks' rheumatological condition did not cause his back pain, but he did not determine what caused Burks' disability.

None of Burks' evidence addressed why his condition worsened despite not wearing a gun belt for approximately a year and his placement on modified duty in 2019.

Third, academic sources did not provide objective medical support. Though academic sources provide theories for why officers who wear duty belts could experience pain, they do not objectively link Burks' back pain to his occupational duties.

Fourth, Burks' medical records were inconsistent. Dr. Best reviewed Burks' medical records in his independent medical evaluation. Specifically, Dr. Best noted that records of Gregory Snider, M.D. from 2019 stated Burks' low back pain was consistent with what would be expected with natural aging. The medical records from Dr. Snider clearly contradict Dr. McEldowney's and Dr. Howard's opinions. Thus, based on our review of the record, the Board's opinion is supported by substantial evidence, the Board clearly considered Burks' evidence, and Burks failed to prove his burden on appeal that his evidence "is so compelling

that no reasonable person could have failed to be persuaded by it." *McManus*, 124 S.W.3d at 458.

In its Appellee Brief, the Board argues Burks' acceptance of non-occupational disability retirement bars this action under the election of remedies doctrine. There is no clear Kentucky case law addressing this issue. In a 1995 unpublished opinion, this Court "held that a retired police officer who was receiving a pension based on age and seniority was not precluded from seeking a disability benefit if there was a delayed manifestation of a job-related injury." *Spears v. Board of Trustees of Lexington-Fayette Urban Cnty. Government Policemen's and Firefighters' Retirement Fund*, 583 S.W.3d 37, 41 (Ky. App. 2018) (discussing *Board of Trustees of Policemens' and Firefighters' Retirement Fund of Lexington-Fayette Urban Cnty. Government v. Karle W. Franklin*, No. 94-CA-001147-MR, 1995 WL 385148 (Ky. App. Jun. 30, 1995)). In *Spears*, this Court declined to apply *Franklin* because it has no precedential or persuasive value and was factually distinguishable. Burks' case is also factually distinguishable from *Franklin* and *Spears*. Though we understand the Board's interest in a ruling on this issue, Burks' appeal fails on the merits of his arguments. Thus, we decline to determine whether Burks' acceptance of non-occupational disability retirement after occupational disability retirement was denied bars him from seeking to change the type of disability retirement he receives.

For the foregoing reasons, we affirm the order of the Fayette Circuit Court affirming the Board's decision.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Donald R. Todd
Lexington, Kentucky

BRIEF FOR APPELLEE:

Brittany Griffin Smith
Lexington, Kentucky