RENDERED: JULY 11, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1150-MR

COOKIE CREWS, IN HER OFFICIAL
CAPACITY AS COMMISSIONER OF
THE KENTUCKY DEPARTMENT OF
CORRECTIONS AND KENTUCKY
DEPARTMENT OF CORRECTIONS                                    APPELLANTS


                    APPEAL FROM FRANKLIN CIRCUIT COURT
v.                  HONORABLE THOMAS D. WINGATE, JUDGE
                    ACTION NO. 23-CI-00068


CAMPBELL COUNTY, KENTUCKY;
BILL HENSLEY, IN HIS OFFICIAL
CAPACITY AS BOYD COUNTY
JAILER; BOYD COUNTY,
KENTUCKY; J. BARRY BRADY, IN
HIS OFFICIAL CAPACITY AS
MARION COUNTY JAILER; JAMES
DALEY, IN HIS OFFICIAL
CAPACITY AS CAMPBELL
COUNTY JAILER; JASON WILSON,
IN HIS OFFICIAL CAPACITY AS
WHITLEY COUNTY JAILER;
KENTON COUNTY, KENTUCKY;
KENTUCKY JAILERS
ASSOCIATION; MARC FIELDS, IN
HIS OFFICIAL CAPACITY AS
KENTON COUNTY JAILER;
MARION COUNTY, KENTUCKY;

AND WHITLEY COUNTY,
KENTUCKY                                                                                    APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, L. JONES, AND TAYLOR, JUDGES.

COMBS, JUDGE:  Appellants, The Kentucky Department of Corrections and Cookie Crews, in her official capacity as Commissioner of the Kentucky Department of Corrections, appeal from an opinion and order of the Franklin Circuit Court granting the motion for partial summary judgment filed by the following Appellees:  Campbell County; James Daley, in his official capacity as Campbell County Jailer; Kenton County; Marc Fields, in his official capacity as Kenton County Jailer; Boyd County; Bill Hensley, in his official capacity as Boyd County Jailer; Marion County; J. Barry Brady, in his official capacity as Marion County Jailer; Whitley County; Jason Wilson, in his official capacity as Whitley County Jailer; and the Kentucky Jailers Association (KJA) .  This order became final on August 18, 2024, when the circuit court granted a motion to dismiss all remaining claims.  We affirm.

The parties agree:  that an inmate housed in a county jail becomes a "state inmate" when he is sentenced by the circuit court to a term of imprisonment of 12 months or more; that the Department of Corrections has 14 state prison

facilities that can house approximately 13,200 inmates; and that the number of state inmates routinely exceeds that number. In order to keep state prison facilities at or below capacity, state inmates often remain housed in county jails. This arrangement is governed either by the terms of a contractual agreement between the county and state government or on a *per diem* basis. With respect to this arrangement, KRS[1] 441.045 provides that the "costs of necessary medical, dental, or psychological care, *beyond routine care and diagnostic services*, of prisoners held in the jail for which the county receives a *per diem* payment shall be paid by the state." (Emphasis added.)

On January 20, 2023, the counties and jailers of Campbell County, Kenton County, and Marion County, joined with the KJA to file a civil action against Commissioner Crews and the Department of Corrections. Later, two more counties and their jailers joined the action. According to the counties, jailers, and KJA, the purpose of the action was to force the Department of Corrections to treat county jails, county taxpayers, and state inmates in accordance with applicable law: 1) by requiring the Department of Corrections timely to classify and transfer state inmates to state prison facilities; and 2) by compelling it to fund adequately the cost of caring for state inmates housed in county jails.

---

[1] Kentucky Revised Statutes.

The complaint charged that the Department of Corrections routinely fails to abide by provisions of KRS 532.100(8) that require it to classify all state inmates within 45 days of final sentencing and to transfer all Class A, Class B, and qualifying Class C inmates to a state prison; and that as a result of this failure, county jails must exceed their capacity. Additionally, Appellees (plaintiffs below) complained that the Department of Corrections does not compensate them adequately for the costs of providing state inmates with necessary medical, dental, and/or psychological care.

The counties, jailers, and KJA alleged that the statutory scheme contemplates that the Department of Corrections will negotiate with counties and will execute contracts addressing the costs of housing and of otherwise caring for state inmates. Instead, they alleged that the Department of Corrections arbitrarily establishes a *per diem* rate of compensation ($35.34, which includes $2.15 for medical expenses), which fails to cover the costs of necessary medical, dental, and/or psychological care that exceed routine care and diagnostic services required by prisoners. For example, Campbell County indicated that it had been required to bear the costs of a suspected heart attack; pregnancy; the surgical repair of an eardrum; cancer treatment; sutures; eye surgery; and biopsies. Kenton County indicated that it had borne the costs of providing necessary orthotics and prosthetics.

On May 28, 2024, the circuit court granted the motion of the counties, jailers, and KJA for partial summary judgment. The court ordered the Department of Corrections to comply with the requirements of KRS 532.100(8) by removing all Class A, Class B, and some designated Class C inmates from county facilities within 45 days of final sentencing. The court directed that where a county does not object to an additional 45-day period (as authorized by House Bill 1, enacted April 13, 2022), the Department of Corrections must remove all Class A, Class B, and some designated Class C inmates from county facilities within 90 days of final sentencing.

The circuit court next addressed the responsibility of the state to bear the costs of providing prisoners' "necessary medical, dental, or psychological care, beyond routine care and diagnostic services" as provided by KRS 441.045(5)(a). The Department of Corrections had implemented a long-standing policy incorporating its definition of "routine care" to include **every** medical, dental, or psychological procedure that did not require hospitalization or general anesthesia. The court concluded that this interpretation was overly broad and saddled the counties and jailers with excessive costs not envisioned by the legislation. It concluded that the application of the statute by the Department of Corrections was arbitrary and contrary to its plain language.

Once the court granted the motion of the counties, jailers, and KJA to dismiss the remaining claims and the order became final, Commissioner Crews and the Department of Corrections filed this appeal. We had declined to grant the intermediate relief sought by Crews and the Department of Corrections.

On appeal, Commissioner Crews and the Department of Corrections argue that the circuit court erred by granting summary judgment with respect to their interpretation of the provisions of KRS 441.045. They contend: that their construction of the term "routine care" is derived from the definition applied by industry experts; that their construction of the term comports with the intent of the legislature; and that we are constrained to defer to their expertise with respect to meaning of the provision. We disagree.

The standard of review in a declaratory judgment action is the same as that in other civil actions. *Baze v. Rees*, 217 S.W.3d 207, 210 (Ky. 2006). We assess whether the Department of Corrections and Commissioner Crews correctly applied the law under a *de novo* standard. *See Smith v. Teachers' Ret. Sys. of Kentucky*, 515 S.W.3d 672, 675 (Ky. App. 2017) (citing *Bd. of Comm'rs v. Davis*, 238 S.W.3d 132, 135 (Ky. App. 2007)).

The Department of Corrections cannot construe or limit the effect of a statute by the implementation of its own internal policies. *See* KRS 13A.130(1)(b). In matters involving statutory interpretation, our role is to "ascertain and give

effect to the General Assembly's intent." *See Kentucky Bd. of Med. Licensure v. Strauss*, 558 S.W.3d 443, 448 (Ky. 2018) (citation omitted). We must presume that the "plain meaning of the statutory language is . . . what the legislature intended[.]" *Revenue Cabinet v. O'Daniel*, 153 S.W.3d 815, 819 (Ky. 2005) (citation omitted).

Commissioner Crews and the Department of Corrections provided the court with the medical-claims handbook that it supplies to county jails. The handbook is prepared by Wellpath, an offsite medical claims administrator, that provides county jails with the information necessary to process claims. It explains that a county facility housing state inmates "is financially responsible for all off-site claims payments, for any medical or dental services, other than inpatient hospital stays or outpatient services with anesthesia."

Commissioner Crews and the Department of Corrections explain that Wellpath is a "well-known health care company that provides medical and mental health services to hundreds of correctional facilities throughout the United States." They contend that the circuit court erred by concluding that Wellpath's definition of "routine care" is arbitrary or that it fails to comport with legislative intent because the company's definition "was developed under the expertise of Wellpath's experience in understanding the different levels of care and the costs for that care." Commissioner Crews and the Department of Corrections argue that

"routine care" is a technical term that they have consistently defined in accordance with the usage of its claims administrators for more than a decade.

Again, in the absence of a statutory definition, words and phrases of a statute are to be construed according to their common usage. *See* KRS 446.080(4). Here, the term "routine care" is not statutorily defined, but we commonly use it to refer to the regular, basic care required to maintain health and to prevent disease. The term "routine care" has not acquired a peculiarized meaning in the law as a technical term. The provision cannot be construed to require more of the counties than what is directed by **the plain language** used by the General Assembly. Furthermore, courts owe no deference to Commissioner Crews or to the Department of Corrections with respect to their interpretation of this statute or any other. Our deference lies with the integrity of the plain statutory language itself. *Revenue Cabinet v. O'Daniel*, *supra*.

Consequently, the circuit court did not err by concluding that to construe "routine care" to include **every** medical, dental, or psychological procedure that does not require hospitalization or general anesthesia is impermissibly broad. Through this interpretation of statutes and the implementation of its own policy, Crews and the Department of Corrections are impermissibly requiring counties to absorb costs not awarded by the legislature.

Last, we have considered the motion of the American Civil Liberties Union of Kentucky to file a brief in this matter as *amicus curiae*. That motion is hereby denied, and a separate order will be entered accordingly.

We affirm the order of the Franklin Circuit Court dismissing this case.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Peter Ervin
Allison R. Brown
Crystal L. Thompson
Frankfort, Kentucky

BRIEF FOR APPELLEES:

Jeffrey C. Mando
Olivia F. Amlung
Casmir M. Thornberry
Covington, Kentucky