RENDERED: NOVEMBER 7, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

## NO. 2025-CA-0129-MR

JASON HARTZLER          APPELLANT

v.          APPEAL FROM KENTON CIRCUIT COURT
HONORABLE KATHLEEN LAPE, JUDGE
ACTION NO. 23-CI-00891

CITY OF COVINGTON AND BOARD          APPELLEES
OF COMMISSIONERS

OPINION
AFFIRMING

** ** ** ** **

BEFORE: EASTON, KAREM, AND McNEILL, JUDGES.

EASTON, JUDGE: The Appellant, Jason Hartzler ("Hartzler"), challenges the punishment he received from the Appellees, the City of Covington ("City") and the Board of Commissioners ("Board"), after an administrative hearing. The circuit court dismissed two counts of Hartzler's Complaint and affirmed the Board on the

final count. After a review of the record and the applicable law, we affirm the Kenton Circuit Court.

## FACTUAL AND PROCEDURAL HISTORY

The facts are largely undisputed. Hartzler was a patrol sergeant with the Covington Police Department ("CPD"). A formal complaint was made against Hartzler by a civilian employee of CPD in early 2023. After an investigation, CPD Internal Affairs determined that Hartzler had committed two acts of misconduct. Upon conclusion of the investigation, the CPD Chief of Police reviewed the findings and recommended that Hartzler be suspended without pay for eight days and undergo retraining.

On March 31, 2023, Hartzler and his counsel were presented with a proposed Suspension Order outlining Hartzler's violations of Police Department Rule 102 (Unbecoming Conduct) and City Policy 800 (Behavior of Employees). Hartzler did not agree to the Suspension Order, and he requested a formal hearing. In April 2023, the City filed formal charges against Hartzler for these violations. We next outline the allegations and evidence of Hartzler's misconduct.

On January 20, 2023, Hartzler was in the evidence room with a female crime scene technician and evidence custodian ("T.V."). He pointed out a hole in the ceiling, which he believed could lead to a breach in security. He requested T.V. join him in the room upstairs, which was in a restricted and isolated area.

According to T.V.'s testimony at the administrative hearing, Hartzler was persistent in his requests that she accompany him upstairs, despite her attempts to decline. As a lab technician, T.V. did not have any authority regarding the CPD building, security, or repairs.

Another detective was in the evidence room at the same time as Hartzler and T.V. T.V. testified that Hartzler wanted her to leave the detective alone in the lab, which is against protocol. She then stated Hartzler left the lab for a few minutes and then returned with the key to the upstairs room. Hartzler then said to her "Let's go." T.V. stated that she mouthed the words "come with me" to the detective, because she felt scared and unsafe. The detective thought T.V. might have even said "help me," and he accompanied them to the upstairs room.

Once upstairs, Hartzler and T.V. looked through the hole in the floor. In the room was a chair near an old computer. The detective inquired what the chair was for, and Hartzler responded that the chair was for "blowjobs." Hartzler again referred to the chair as the "blowjob chair." Once they all went back downstairs, T.V. told the detective she was very uncomfortable and did not want to be in the room alone with Hartzler. T.V. filed a complaint against Hartzler. T.V. testified that she felt she needed to report the situation because there are times when she is alone during her shift, and she wanted her supervisor to be aware of what occurred to keep her safe. T.V. indicated that the reference to the "blowjob

chair" was the only time Hartzler made any sexual comment. She also confirmed Hartzler did not touch her or make any physical advance toward her.

The detective who accompanied T.V. and Hartzler upstairs confirmed T.V.'s testimony. He stated the whole situation was "weird," and he was "on guard" during the interaction. He also confirmed that T.V. seemed uneasy after the interaction. She told him she didn't want to go there, and that she didn't like that Hartzler had changed shifts to be the supervisor during her shift.

The second incident referenced in the charging document occurred in December 2022. In this incident, Hartzler removed the Velcro "Police" patch on the back of a new female recruit's uniform and replaced it upside down on her uniform immediately prior to roll call. This recruit was beginning her fifth day of work as a police officer after graduating from the police academy. Hartzler then removed it again and put the placard into the correct position after the recruit asked him to fix it.

Hartzler testified he did this as a joke. But it made the recruit uneasy. She did not know Hartzler, but she was able to tell from his uniform that he was a supervisor. This interaction was the first time she met him. Other witnesses in the room indicated they were uncomfortable with the interaction, and they observed that the recruit also appeared uncomfortable. The recruit later reported she did feel uncomfortable with Hartzler touching her vest, but did not want to make a report

because of his supervisory status and her being a very new employee. The following day, Hartzler was given a verbal warning by a lieutenant, although this warning was not otherwise formally documented.

A few weeks later, in January 2023, Hartzler then approached the same recruit while she was in her police cruiser and apologized for making her uncomfortable during roll call. Another officer in the car witnessed this interaction. Hartzler told the recruit that he got in trouble. The recruit testified that Hartzler's apology seemed insincere, and that the interaction was awkward and again uncomfortable. Shortly thereafter, Hartzler interjected himself into a training exercise with the recruit, and he began to instruct her in a way that was contrary to the instruction she had received from the official trainers for the exercise.

A formal and public hearing was held on the evening of April 26, 2023. This hearing included approximately six hours of testimony and an hour of deliberation by the Board. Those testifying included T.V., the detective who was present during the incident with T.V., the recruit, the chief of police, and Hartzler, among others. The Board determined that Hartzler had in fact violated City Policy 800 and Police Department Rule 102. The Board voted unanimously to fix Hartzler's punishment at thirty days' suspension without pay, as well as a demotion of one rank, pursuant to KRS[1] 95.450.

_____

[1] Kentucky Revised Statutes.

Hartzler filed a Complaint in the Kenton Circuit Court on May 24, 2023, appealing the administrative action. He claimed his conduct did not constitute sexual harassment, and therefore the decision of the Board was arbitrary. He also claimed the penalty imposed was inconsistent with the police department's policy of progressive discipline and that the Board had engaged in retaliation. The circuit court dismissed the last two claims via Order entered August 30, 2024, finding that the only issue for it to decide was whether the decision of the Board was arbitrary. On January 15, 2025, the circuit court affirmed the Board as to Hartzler's primary claim of error, finding that the Board did not act arbitrarily, and he was not denied due process. This appeal follows. Additional evidence will be discussed as it becomes relevant to our analysis.

## STANDARD OF REVIEW

Judicial review of administrative action is whether that action is arbitrary. *American Beauty Homes Corp. v. Louisville & Jefferson County Planning & Zoning Commission*, 379 S.W.2d 450, 456 (Ky. 1964). "A reviewing court assesses whether the agency correctly applied the law under a *de novo* standard of review. If the court finds that the agency applied the correct rule of law to facts supported by substantial evidence, the court must affirm the agency's final order." *Smith v. Teachers' Ret. Sys. of Kentucky*, 515 S.W.3d 672, 675 (Ky. App. 2017) (citation omitted).

## ANALYSIS

Hartzler argues the Appellees' decision was unsupported by substantial evidence, because his conduct does not meet the legal criteria for sexual harassment. He further argues their decision was arbitrary, because the City failed to follow its policy of progressive discipline. Hartzler claims the punishment imposed was retaliation and thus a violation of his due process rights. Finally, he argues the Appellees waived their right to contest the appeal by failing to timely file an Answer and entering into an agreed scheduling order. We agree with the circuit court that the issue in the appeal to the circuit court and thus our review of that appeal is limited in scope to whether the actions of the Board were arbitrary.

A determination of arbitrariness "is comprised of three elements: 1) whether the agency acted in the exercise of its statutory powers; 2) whether a party affected by an administrative order received procedural due process; and 3) whether the agency action is supported by substantial evidence." *Friends of Louisville Pub. Art, LLC v. Louisville/Jefferson Cnty. Metro Historic Landmarks & Pres. Districts Comm'n*, 671 S.W.3d 209, 213 (Ky. 2023). "Substantial evidence means evidence that is sufficient to induce conviction in the minds of reasonable people." *Smith*, 515 S.W.3d at 675.

The Board concluded that Hartzler had violated two policies, City of Covington Personnel Policy 800 and Covington Police Department Rule 102. Policy 800 reads:

> It is the policy of the City of Covington that certain rules and regulations regarding employee behavior are necessary for efficient business operations and for the benefit and safety of all employees. Conduct that interferes with operations, discredits the City, or is offensive to citizens or coworkers will not be tolerated.

Police Department Rule 102 is titled "Unbecoming Conduct," and it reads:

> Employees of the Police Department shall conduct themselves at all times, both on and off duty, in such a manner as to reflect most favorably on the Agency. Unbecoming conduct shall include that which brings the Agency into disrepute or reflects discredit upon the individual as an employee of the Police Department, or that which impairs the operation or efficiency of the Agency of the individual.

The first factor in analyzing if an agency's action was arbitrary is whether the Board acted in excess of its statutory powers. The discipline of police officers is governed by KRS 95.450 and KRS 15.520. The relevant portions of KRS 95.450 are stated as follows.

> KRS 95.450. Discipline of members of police and fire departments in urban-county governments and cities on DLG's registry of cities that belonged to the second and third classes on January 1, 2014.
>
> (2) Except as provided in subsection (6) of this section no member of the police or fire department in cities listed on the registry pursuant to subsection (9) of this section or

an urban-county government shall be reprimanded in writing, dismissed, suspended, or reduced in grade or pay for any reason except inefficiency, misconduct, insubordination, or violation of law or of the rules adopted by the legislative body, and only after charges are preferred and a hearing conducted as provided in this section. . . .

(4)(a) Upon the hearing all charges shall be considered traversed and put in issue, and the trial shall be confined to matters related to the issues presented. . . .

(7) The legislative body shall fix the punishment of a member of the police or fire department found guilty, by a reprimand in writing, suspension for any length of time not to exceed six (6) months, by reducing the grade if the accused is an officer, or by combining any two (2) or more of those punishments, or by dismissal from the service.

This statute clearly grants the Board the statutory authority it exercised in this action. Hartzler was found guilty of misconduct by violating two separate policies, and the punishment imposed by the Board was within the bounds explicitly outlined in the statute.

Next, we must assess if Hartzler was denied due process, which would render the Board's actions arbitrary. "As a general rule, in an administrative setting, procedural due process merely requires a hearing, the taking and weighing of evidence if such is offered, a finding of fact based upon a consideration of the evidence, the making of an order supported by substantial evidence, and, where the

-9-

party's constitutional rights are involved, a judicial review of the administrative action." *Friends of Louisville Pub. Art, LLC*, *supra*, at 213.

In addition to these general rules, police officers are entitled to specific provisions regarding their disciplinary hearings under KRS 15.520. The relevant portions of this statute provide:

> (7) Unless waived by the charged officer in writing, a hearing shall be conducted by the officer's appointing authority to determine whether there is substantial evidence to prove the charges and to determine what, if any, disciplinary action shall be taken if substantial evidence does exist. In conducting a hearing, the following administrative due process rights shall be recognized and these shall be the minimum rights afforded any officer charged, except as otherwise agreed to in writing by the officer and the employing agency: . . .
>
> > (e) The accused officer shall have the right and opportunity to obtain and have counsel present, and to be represented by counsel; . . .
> >
> > (g) The accused officer shall be allowed to present witnesses and any documentary or other relevant evidence the officer wishes to provide to the hearing authority, and may cross-examine all witnesses called by the charging party; . . .
> >
> > (j) The failure to provide any of the rights or to follow the provisions of this section may be raised by the officer with the hearing authority. The hearing authority shall not exclude proffered evidence based on failure to follow the requirements of this section but shall consider whether, because of the failure, the proffered evidence lacks weight or credibility and whether the officer has been materially prejudiced . . . .

-10-

(8) (a) Any officer who is found guilty by any hearing authority of any charge, may bring an action in the Circuit Court in the county in which the employing agency is located within thirty (30) days of the date written findings are issued to appeal the action of the hearing authority. The appeal shall be initiated by the filing of a complaint in the same manner as any civil action under the Rules of Civil Procedure and shall include a copy of the hearing authority's final order. The Circuit Court review of the case shall be based solely upon the administrative record created before the hearing authority and any new evidence offered by the officer regarding alleged arbitrariness on the part of the hearing authority.

(b) The judgment of the Circuit Court shall be subject to appeal to the Court of Appeals. The procedure as to appeal to the Court of Appeals shall be the same as in any civil action.

All due process rights were afforded to Hartzler throughout this process. An investigation began upon the filing of a complaint against him. Hartzler was then given an offer of an agreed-upon suspension, which he declined, and a full hearing took place, in which he was represented by counsel. Hartzler's counsel cross-examined every Board witness, and he presented witnesses of his own.

The final prong to determine is that of substantial evidence. This prong is the crux of Hartzler's appeal. He argues that because his behavior did not

rise to the level of actionable sexual harassment, he could not be disciplined for those behaviors. Hartzler is wrong.

Pursuant to KRS 95.450(2), "no member of the police or fire department . . . shall be reprimanded in writing, dismissed, suspended, or reduced in grade or pay for any reason except inefficiency, *misconduct*, insubordination, *or violation of law or of the rules adopted by the legislative body . . . .*" KRS 15.520(1)(g) states "'Misconduct' means any act or omission by an officer that violates criminal law, law enforcement procedures, *or the general employment policies of the employing agency*[.]" There is simply no requirement that an employee's actions must rise to level of a tort or violation of law in order for his employer to discipline him.

As previously discussed, there is no real dispute as to the facts of Hartzler's behavior. He admitted he said and did what was alleged; he simply denies that these actions amount to misconduct because they do not rise to the level of sexual harassment as defined by law. That is not the standard.

Policy 800's final sentence reads: "Conduct that interferes with operations, discredits the City, or is offensive to citizens or coworkers will not be tolerated." Hartzler's actions can certainly be viewed as offensive to his coworkers, and several coworkers testified to this. In one incident, Hartzler approached a new female recruit, who had only been on the job for five days. She

had never met Hartzler before, but she knew he was a supervisor. Without asking for consent or any introduction whatsoever, he touched her back and interfered with her uniform. While this may not appear to be an act of harassment at first glance, context is important. This recruit was new, she was one of very few individuals in the roll call room, and a male supervisor whom she had never even seen before walks up to her and touches her back. It is not unreasonable that this would make someone uncomfortable. Others in the room, including another sergeant, agreed that the interaction seemed inappropriate.

Several weeks later, Hartzler then informed the recruit that he got in trouble based on that interaction. He testified this conversation was meant to be an apology, while the recruit characterized it more as a "rant." And on another occasion, Hartzler interjected himself into this recruit's training exercise when he was not the trainer. According to the recruit's testimony, Hartzler critiqued her in opposition of what the trainers just instructed her to do. This could reasonably be intimidating to a new officer. The recruit agreed that Hartzler did not proposition her or say anything sexually explicit, but his actions nonetheless made her feel uncomfortable.

In the second incident, Hartzler attempted to get a female lab technician to leave the lab and go into a restricted and isolated area alone with him. While Hartzler claims it was not his intent to get her alone, T.V. testified he was

-13-

persistent in his requests for her to accompany him upstairs and that he even suggested leaving the detective in the lab alone, which was against protocol. Then, once in the upstairs room, he made a sexually suggestive joke. T.V. testified the entire encounter made her uncomfortable, and the detective testified he was "on guard" during this event.

Hartzler's general argument is that these incidents do not amount to sexual harassment and that he did not have the intent to make anyone uncomfortable. While that may be the case, that again is not the standard. Hartzler testified he had made jokes and played pranks similar in nature before, and no one complained about being uncomfortable. Perhaps if Hartzler had made these jokes to another officer with whom he already had rapport, the result may very well have been different. Even Hartzler admitted in his testimony that he did not know if these two women would find his jokes amusing or not.

> Q: So you didn't know the employees well enough to know whether or not your jokes were going to land well.
>
> A: No. I mean, not really. I don't know if they were going to land well or not, but it seemed like they weren't uncomfortable at the time so I didn't think anything of it.[2]

Hartzler presented testimony of several commendations he received, as well as the testimony of a civilian witness who spoke very highly of him and his

---

[2] Transcript of administrative hearing, Page 277.

demeanor as an officer. Hartzler may very well be an exemplary officer in some respects while still behaving inappropriately in other ways, particularly around female coworkers. These are not mutually exclusive.

Hartzler makes much of the fact that the City also has Policy 800a, Non-Discrimination and Harassment, which is included under Policy 800. This policy reads:

> It is the policy of the City of Covington to create a work environment in which all individuals are treated with respect and dignity. Each individual has the right to work in a professional atmosphere that promotes equal employment opportunities and prohibits discriminatory practices, including harassment. Therefore, the City of Covington expects that all relationships among persons in the work environment will be business-like and free of bias, prejudice, and harassment.

The policy then goes on to include "Definitions of Harassment." This section states:

> Sexual harassment constitutes discrimination and is illegal under federal, state, and local laws. For the purpose of this policy, sexual harassment is defined, as in the EEOC Guidelines, as unwelcome sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature when, for example (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment; (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual; or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or

-15-

creating an intimidating, hostile, or offensive working environment.

Additional examples are then provided. Hartzler argues that because the policy references federal, state, and local law, as well as the EEOC guidelines, he cannot be found to have violated this policy if his behavior does not rise to a violation of law. Again, Hartzler is mistaken. First, Hartzler was not found specifically to have violated Policy 800a, but instead Policy 800, which is more general in nature and generally covers offensive behavior.

Hartzler also ignores various phrases in Policy 800a. The policy includes illegal acts but goes further. It includes verbal conduct of a sexual nature, such as a suggestive reference to a chair where oral sex is performed. The policy requires "business-like" behavior and that fellow employees be treated with "respect and dignity."

It is also not an unreasonable conclusion that Hartzler's behavior violated Policy 800a(3), in that his conduct had "the purpose or effect of unreasonably interfering with an individual's work performance." T.V. testified she felt scared and unsafe after her interaction with Hartzler, and she disliked that he was now the supervisor during her shift, rather than another sergeant. She felt the need to report the incident, so others were aware of it in order to protect herself in the future. The recruit also stated her interactions with Hartzler left her frustrated and uncomfortable.

We determine there was substantial evidence that Hartzler violated both Policy 800 and Rule 102 and therefore, the Board's findings were not arbitrary. Indeed, Hartzler does not appear to challenge the finding that he violated Police Department Rule 102; he just does not think it was that big of a deal.

"In weighing the substantiality of the evidence supporting an agency's decision, a reviewing court must hold fast to the guiding principle that the trier of facts is afforded great latitude in its evaluation of the evidence heard and the credibility of witnesses appearing before it." *Bowling v. Nat. Res. & Env't Prot. Cabinet*, 891 S.W.2d 406, 409-10 (Ky. App. 1994). "[I]f there is substantial evidence in the record to support an agency's findings, those findings should be upheld on appeal even though there may be conflicting evidence in the record." *City of Lancaster v. Trumbo*, 660 S.W.2d 954, 956 (Ky. App. 1983).

Because all three prongs have been satisfied, we determine the Board's actions were not arbitrary. As stated previously, whether an administrative action is arbitrary is the only question we have the ability to review. Hartzler raised several additional arguments, which we will only briefly touch upon for completeness of our analysis.

First, Hartzler makes the specific challenge that his due process rights were violated when the Board filed a motion to dismiss his complaint in circuit court. The circuit court did indeed dismiss a portion of his claim, determining it

-17-

was outside of the scope of its review. These portions of his complaint are also the bases for his additional arguments to this Court. He argues that the Board failed to follow their policy of progressive discipline and that the punishment they issued constituted retaliation because it was harsher than the original offer of an eight-day suspension offered by the Chief of Police.

We agree with the circuit court that these arguments are beyond the scope of judicial review of the action authorized as an appeal. We also add that our conclusion that the Board acted properly and within its authority effectively forecloses any merit to Hartzler's additional contentions. We cannot say that the punishment imposed was excessive or any indication of retaliation.

"The function of the hearing body in instances of charges against police officers is to make two determinations: first, whether the officer has violated the rules and regulations of the department and if so, second, it must exercise its discretion in imposing a penalty. The first is subject to judicial review; the second is not. Sound public policy requires that the matter of punishment and discipline of a police officer be left to the city." *Stallins v. City of Madisonville*, 707 S.W.2d 349, 350 (Ky. App. 1986). "A reviewing court does not have the authority to review the penalty determination of the civil service board and does not have the power to reverse the disciplinary action taken by the Board." *City of Louisville By & Through Kuster v. Milligan*, 798 S.W.2d 454, 458 (Ky. 1990). *See*

*also City of Richmond v. Howell*, 448 S.W.2d 662 (Ky. 1969). This Court's opinion as to whether Hartzler's conduct warranted the punishment delivered by the Board is beyond the scope of judicial review.

**CONCLUSION**

Hartzler violated a rule and policy of the CPD with his admitted conduct. The Board and City proceeded properly and within their authority to discipline Hartzler. The circuit court correctly determined that the Board and City did not act arbitrarily. The decision of the Kenton Circuit Court is AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Luke Morgan
Lexington, Kentucky

BRIEF FOR APPELLEE CITY OF COVINGTON:

David E. Davidson
Frank M. Schultz
Covington, Kentucky